## DAMON MUTUAL BENEFIT ASS'N v. HOFFMAN.

No. 21886.  Sept. 25, 1934.

Rehearing Denied Oct. 16, 1934.

Application to File Second Petition for Rehearing Denied Dec. 4, 1934.

H. A. Wilkinson and Hill, Lawrence & Hill, for plaintiff in error.

Sam Gill, for defendant in error.

PER CURIAM. This appeal is from the judgment of the district court of Oklahoma county, in a suit wherein the defendant in error, Rose D. Hoffman, was the plaintiff, and the plaintiff in error, Damon Mutual Benefit Association, a corporation, was the defendant. The parties will be referred to herein as plaintiff and defendant as they appeared in the trial court.

The plaintiff's suit was based upon a policy of insurance issued by the defendant on the life of her husband, Cornelius Hoffman, plaintiff being the beneficiary named in said policy. Plaintiff alleges in her amended petition that the defendant is an assessing or mutual benefit association, issuing policies insuring its members against death. That one D. E. White was the active vice president and general manager of the defendant company, with full power and authority as such to make contracts and to write insurance and secure members of and for said defendant company and to collect premiums, membership fees, dues, and assessments, and to make contracts with reference thereto and to act in all matters and things fully and completely for and on behalf of said defendant corporation.

That on or about the 7th day of September, 1928, the said D. E. White, and said defendant company, **orally agreed** (emphasis ours) with the said Cornelius Hoffman, now deceased, that if the said Cornelius Hoffman would make application for a policy for $1,000. in the said defendant company, said defendant company would look to the said D. E. White for membership fees therein and all dues and assessments for a period of approximately one year, and would issue said policy and keep same in force and effect for said period, without payment direct from the plaintiff or said Cornelius Hoffman therein or therefrom, and said company would accept said D. E. White's promise of payment to it on similar sums due and to become due by the said D. E. White to said Cornelius Hoffman for said membership dues and assessments.

Plaintiff then alleges that the policy was issued and delivered to the insured,

Cornelius Hoffman, and that thereafter the said D. E. White on numerous occasions orally assured the said Cornelius Hoffman the policy was and would be continued in full force and effect according to the said agreement; that under the terms of the policy, upon the death of the insured, the defendant would pay plaintiff the sum of $1,000; that the insured, Cornelius Hoffman, died on December 16, 1928; that, within a few days after the death of the insured, D. E. White, vice president and general manager of the defendant company, informed and advised the plaintiff that her husband's policy had lapsed and was not in force, and that said defendant would not pay same and that all she would ever get out of the policy would be the sum of $9; that she at that time accepted the $9 from the said D. E. White, due to her nervous condition and grief over the loss of her husband because the said D. E. White repeatedly told her in angry tone she had no redress. The plaintiff tendered the $9 into court. Plaintiff further alleges the membership fee on said policy was $5.50, and that assessments thereon, sufficient to carry the policy in full force and effect up to and including the death of her husband, were the sum of $2.20; that the plaintiff and her husband, the insured, relied fully and implicitly upon the representations and statements made by D. E. White and was not advised until his death that the defendant would contend that said policy of insurance was not in full force and effect and that, at the time of the death of her husband, the said D. E. White had in his possession, belonging to said Cornelius Hoffman, to be applied in membership fees and assessments, the sum of $20, being more than enough to pay the $7.20 to said company and to comply with its contract and agreement.

Plaintiff attaches to and makes a part of her petition a copy of the policy, and asks for judgment against defendant in the sum of $1,000 with interest at 6 per cent.

To this amended petition of plaintiff the defendant filed its answer, in which it admits that the defendant is a corporation and engaged in the business as alleged by plaintiff. The defendant admits that D. E. White is vice president and general manager of its company, but denies that he had authority to enter into contracts in behalf of the defendant and solicit membership therein, or to collect dues or assessments or to make any contracts with reference thereto.

Defendant admits the issuance of the policy to Cornelius Hoffman, and pleads that the same was subject to the terms thereof and to the by-laws of said association in force at said time. Defendant admits that Cornelius Hoffman died at the time and as set forth in plaintiff's amended petition. Defendant's answer is not verified.

The proof of the plaintiff was to the effect that D. E. White came to her husband's place of business about September 7, 1928, where she and her husband were engaged in the picture business, and that D. E. White wanted some pictures made and ordered some pictures made, and at that time solicited her husband to take a policy and agreed he would pay the premium on the policy and future assessments and would take in turn from them pictures; that her husband signed a written application for insurance; that it was agreed between her husband and D. E. White that no money would be required at the time of the issuance of the policy, and that White would pay the assessments. Plaintiff's testimony, however, does not show how long the assessments would be paid; that White would take care of the assessments if the insured made pictures for him, and they did make pictures for him and that White said the arrangement would be acceptable to the company, that is, that the company would accept him for the future assessments; that in a short time after this agreement was made, the policy was delivered by White personally. The plaintiff then testified that the next she heard from the policy it had lapsed. She introduced in evidence two notices, the first was a notice of assessment for $1.10, the second notice, which was received about October 19th, was for the purpose of calling the attention of the insured to the assessment and a warning not to go delinquent, showing final due date on assessment to be October 30th.

Plaintiff then testified that after receiving the second notice, Mr. White was in the office and had some pictures made, the date being about the latter part of November; that the notices were mentioned to White and he stated that he would "straighten it up when he got his pictures made for Christmas;" that the reason the assessment of $1.10 was not sent in, Mr. White agreed to straighten it up. That the amount agreed upon between Mr. White and her for the pictures was $18 and that Mr. White got

the pictures about Christmas, or the latter part of December, 1928, after Mr. Hoffman had died.

Plaintiff admits that the insured paid no attention to the notices sent to him. There was some testimony on the part of the plaintiff as to the settlement had with Mr. White at the time he paid her $9, and the circumstances surrounding her accepting the $9, which we do not deem very essential to a determination of this case. On the question that we deem material in the case, the plaintiff testified as follows, on direct examination:

"Q. Mrs. Hoffman, who was to pay the company for the policies? A. Mr. White. Q. At the time the application was signed and delivered to Mr. White, what was said by him with reference to the payment of assessments? A. He said nothing only he said he would take care of the assessments by having pictures made from time to time. Q. Did he have the pictures made? A. Yes, sir; and they were to go on the insurance. Q. All right, why do you say the pictures were to go on the insurance? A. Because he said to Mr. Hoffman, he said he would have these pictures made and when he came in there a day or so just before Mr. Hoffman's death, Mr. Hoffman took the pictures, and he said, Mr. Hoffman said to him, he says, 'Will you straighten up that insurance. Mr. White?' and he said 'Yes,' and he went out the door and that was the last words Mr. Hoffman said to him."

Plaintiff introduced in evidence the following notices:

"Assessment Notice      (Form 5—3M—4-28
                        (Mail Now
"Payable Within 15 Days (    and
                        (Make Sure.
"Dear Member:

"The board of directors hereby given notice of an assignment due on your certificate number and for the Group given below. This assessment and amount is explained on the last printed line on the back of this card. This assessment will be marked paid when received by us and this same card will be returned to you when other assessments are due.

                        "Fraternally,
                        "James B. White,
                            "Sec.,-Treas."

"Form 9              Don't Go Delinquent.
"Dear Member:

"At the time of mailing this notice we have not yet received your remittance for the assessment and amount printed below. The last day of payment is given to the right,

at which time your 15 **days of grace will expire. Dont lay this notice aside** but mail today with your remittance. **Take no chances.**

"If you have remitted by a late mail disregard this notice.

            "Fraternally,
            "James B. White, Sec'y-Treas."

The second notice was received on October 19th. In the latter part of November, according to plaintiff, Mr. White was at her place of business; plaintiff was asked the following:

"Q. When he was in on that occasion, did you talk to him about these notices? A. Yes, sir, we did; and he said he would straighten it up when he got his pictures made-for Christmas. Q. Why didn't you send in the insurance. A. Because we looked to Mr. White to do that, we looked to him to pay them. He said he would."

On cross-examination, being asked about the notices, plaintiff testified:

"Q. You didn't pay any attention to those notices? A. No, because we were depending on Mr. White. Q. You never did pay any of those notices? A. No. Q. You never did pay any assessments, or anything? A. No. Q. You knew the kind of insurance it was, that it was club insurance, didn't you, and that every member of the club was assessed, you knew that, didn't you? A. Yes. Q. So it was the latter part of November, or the first of December when you again saw Mr. White? A. Yes."

At the close of the plaintiff's testimony, the defendant demurred to the evidence of the plaintiff for the reason it was insufficient to constitute a cause of action in favor of the plaintiff and against the defendant, or insufficient to go to the jury. This demurrer was overruled by the court and exceptions saved. The defendant offered the evidence of Mr. White as to the transaction with the insured at the time the application for insurance was received. His testimony contradicted that of the plaintiff in all essential particulars pertaining to the oral transactions alleged and testified to by the plaintiff. The defendant then introduced in evidence the by-laws of the defendant company; also introduced in evidence notices that were sent to the insured and testified that no effort was ever made by the insured to be reinstated. At the close of all the testimony, the defendant again demurred to the testimony and asked for an instructed verdict, which was overruled and exceptions saved, and the matter submitted to a jury and the verdict of the jury was

in favor of the plaintiff for the amount sued for.

The policy of insurance attached to and made a part of plaintiff's petition contained the following provisions:

"Said member further agrees that his or her failure to make any of said payments herein and agreed to be made within the time and manner herein set forth, shall terminate his or her benefit certificate of membership and all rights, or claims he or she, or his or her beneficiary may have in, or against the association and stand suspended without further notice."

Also:

"This benefit certificate of membership is issued upon the warranty by the applicant of the truth of all the statements and answers made in his or her application for membership, said application being a material part of this certificate * * * and will be continued upon the further payment of all dues, together with all assessments levied and assessed by the board of directors, and is accepted by the member subject to the articles of incorporation, the laws of the state of Oklahoma, and the by-laws of this association now in force and which may hereafter be adopted."

The defendant introduced in evidence the by-laws of the association. The by-laws provide as follows:

"Every application for membership in this association shall be in such form as the board of directors may prescribe, to wit," and then sets out those things that must be shown in the application.

The by-laws provide further:

"And said benefit certificate, together with application of said member and warranties, and together with the articles of incorporation, the law of Oklahoma, by-laws of the association then in force and which may hereafter be adopted shall constitute in each case the **entire contract** (emphasis ours) between the said member and the association."

"A member having lapsed, he may be reinstated upon application, subject to the approval of the board of directors."

The by-laws provide for the payment of assessments ordered by the board of directors, and provide for notice to policyholders.

"And any member who shall fail to remit or pay said assessment * * * shall ipso facto cease to be a member of the association and his certificate of insurance shall then and there cease. * * *"

These assessments, according to the by-laws, should be remitted "To the treasurer of the association at its business office in Oklahoma City, Oklahoma."

The by-laws provide for a general manager and define his duties as follows:

"A general manager of the association shall be elected, who shall be an experienced insurance man, familiar with life insurance in general, who shall be in charge of the general management of the association. He shall employ all agents or representatives, supervise and discharge same at his discretion, shall name agents or representatives, commission payable, assign all territory, and shall from time to time employ or discharge all help necessary to properly conduct the business of the association, and perform such other duties relative to his position, as, from time to time, may be authorized by the board of directors to properly conduct and extend the business of the association, to assist the board of directors and officers in making the annual and other reports."

This record and testimony present for determination whether or not under the testimony the plaintiff is entitled as a matter of law to recover. If the matter was one for determination of the jury, the testimony on the controverted question of fact is ample to sustain the verdict of the jury. But we do not think the question was for the jury. The language of the policy or benefit certificate sued on and introduced in evidence by plaintiff, expressly provides, in event of failure to pay assessments when due, membership in the association is terminated without further notice. Plaintiff's policy lapsed for nonpayment of an assessment, unless the agreement claimed with the agent, White, prevented a lapse. Plaintiff claimed no reinstatement if the policy had lapsed. And after a lapse of such a policy is shown the burden is on the plaintiff to prove a reinstatement in the manner provided in the by-laws of the company. In order to determine whether or not the oral agreement claimed by plaintiff could prevent a lapse of the policy, it is necessary to look to the by-laws of the association. The burden of pleading and proving the by-laws of the association is on the defendant; consequently, the demurrer to plaintiff's testimony was properly overruled.

The defendant introduced the by-laws in evidence, and their correctness is not disputed. We now consider the defendant's motion for a directed verdict at the close of all of the testimony, and, for the purpose of this motion, we will assume the oral agreement claimed by plaintiff to be es-

tablished. In determination of whether or not the defendant is bound by this **oral** agreement, we must bear in mind the kind of insurance involved. The defendant is a mutual benefit association. It's organization and methods are in many respects widely different from old line companies.

"The rights and liabilities of parties in a mutual co-operative insurance company are essentially different from the rights and liabilities in a stock insurance company. This difference is remarked upon by Mr. May in his work on Insurance, sec. 146. He says: 'Mutual insurance, it is truly observed, is essentially different from stock insurance, and much of the litigation that has grown out of this species of insurance has been owing to inattention to this difference. Its original design was to provide cheap insurance by means of local associations, the members of which should insure each other. Such associations are in their nature adapted only to local business. They need many by-laws and conditions that are not required in stock companies; and it is necessary and equitable that each person who gets himself insured in them should become subject to the same obligations toward his associates that he requires from them towards himself. If the officers have discretionary power as to the terms of the contract, or even as to its form, it is obvious that different parties may become members upon different terms and conditions, and thus the principle of 'mutuality' will become completely abrogated.'" Clark v. Mutual Reserve Fund Life Association, 43 L. R. A. 395.

The law is well settled in this state that this type of insurance is controlled by statutes of the state, and that the by-laws of the association are a part of the contract of insurance and that the insured contracts with notice of the provisions of the by-laws of the association.

In the case of Modern Brotherhood of America v. Beshara, 42 Okla. 684, 142 P. 1014, the law is stated:

"The general rule that a member of a fraternal benefit society is charged with knowledge of its by-laws, rules and regulations, and is bound by the provisions thereof, is well settled in the courts of this country."

See, also, American Insurance Union v. Coward, 134 Okla. 303, 272 P. 1023.

"The Legislature of our state has provided that the memberships of a mutual benefit association, such as defendant, are bound by the by-laws of the association, and further that the affairs of such association shall be conducted strictly in accordance with their respective by-laws." Section 10623, C. O. S. 1931.

Under the foregoing authorities the insured in this case was bound to know that the application which he signed became a material part of his contract of insurance, and that said application, together with the benefit certificate, the articles of incorporation, the laws of Oklahoma, and the by-laws of the association, constituted his entire contract with the association. It is clear, further, that the contract between the insured and the mutual benefit association, under the law and by-laws in force, is a written contract, not partly written and partly oral.

Plaintiff in her brief raises the point that the answer of the defendant does not raise an issue as to the authority of the agent, White, in this case, to make the contract which she contends was made in this case, and cites general authority that an unverified general denial admits the allegations of agency and authority of an agent. As a general proposition, this is true. But this rule of pleading cannot avail the plaintiff for the reason that the insured was conclusively presumed to know the laws of the association, and that the agreement claimed with White was in excess of the powers conferred by the by-laws.

When the insured received notice of the assessment from the defendant company, it was incumbent on him either to pay the assessment himself or see to it that White paid it for him. Nothing in the by-laws authorizes anyone to accept the promise of a third person to pay assessments in lieu of actual payment. The by-laws expressly prohibit reinstatement of a member except upon written application and upon conditions approved by the board of directors. No agent of the company had authority to make oral agreements contrary to the plain provision of the by-laws. For authority see Baxter v. Chelsea Mutual Fire Insurance Co. (Mass.) 79 Am. Dec. 730; Mulrey v. Shawmut Mutual Fire Insurance Co. (Mass.) 81 Am. Dec. 689; Bacon on Benefit Societies and Life Insurance, vol. 1, p. 127; Harvey v. Grand Lodge, 50 Mo. App. 472; Lamb v. Merchants Nat. Mutual Fire Insurance Co., 18 N. D. 253, 119 N. W. 1048.

The motion for a directed verdict should have been sustained.

The judgment of the lower court is reversed and the case demanded, with directions to enter judgment for the defendant.

The Supreme Court acknowledges the aid of District Judge Eugene Rice, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.