## GRAND LODGE A. O. U. W. v. HOPKINS.

No. 25316.   Nov. 5, 1935.

Rehearing Denied Dec. 3, 1935.

E. M. Bradley and Thompson & Walker, for plaintiff in error.

McComb & Conrad and Robert D. Crowe, for defendant in error.

PER CURIAM.   Plaintiff in error appeals from a judgment against it, in favor of defendant in error, on an insurance policy which it executed on the life of Horace E. Hopkins, of which defendant in error was the beneficiary. Hereinafter, the

parties will be designated as they appeared in the trial court.

Some of the questions raised on this appeal arise upon the pleadings, so that it will be necessary to refer more fully to them than would otherwise be required. Plaintiff's petition, in substance, alleges the incorporation of the defendant under the laws of the state of Oklahoma, as a fraternal order engaged in the business of insuring the lives of its members; that on March 31, 1925, defendant executed and delivered to Horace E. Hopkins, deceased, a policy of life insurance, or beneficiary certificate, whereby it agreed to pay plaintiff, as the wife of Horace E. Hopkins, in the event of his death, the sum of $2,000, and there is attached to the petition, as an exhibit, a copy of this policy.

Plaintiff also alleged that Horace E. Hopkins died November 20, 1931; that he, and plaintiff, as the beneficiary of said policy, "at all times prior to the death of the insured and subsequent thereto, did, in every particular conform and comply with and to all of the terms of said policy or beneficiary certificate and did in every way comply with all the provisions thereof * * * upon their part"; that defendant, by denying liability under said policy on the ground that it was not in force at the time of the death of the insured waived formal proof of death by plaintiff; that demand by plaintiff for payment of the amount due her on this policy had been made, and refused by defendant, followed by prayer for a judgment for $2,000, interest and costs.

After motions to quash summons and to require plaintiff to make her petition more definite and certain had been filed and overruled, defendant filed what it designated a general demurrer and a special demurrer. These were overruled, defendant excepting to the order overruling same.

Defendant answered setting up three separate defenses. In its first defense defendant enters a general denial, except matters thereinafter admitted. Defendant admits that it executed and delivered to Horace E. Hopkins a policy of life insurance, or beneficiary certificate, with plaintiff as beneficiary, substantially as alleged in plaintiff's petition, and attaches a copy of this policy as an exhibit to its answer. The first defense also alleges that under the provisions of this policy, Horace E. Hopkins was required to pay to defendant monthly the sum of $10.69, consisting of $10.44 as monthly premium and 25c local dues; that these payments were made until the one required for March, 1930 (payable at any time during that month) when the insured failed to make this monthly payment, or any monthly payment due thereafter, and was suspended from membership in defendant for failure to make the payment for March, 1930, and never reinstated; that, as he was permitted to do under this policy, Horace E. Hopkins, on August 19, 1929, borrowed from defendant $164.96 under an agreement that he would pay interest on said amount at the rate of 5 per cent. per annum; that under this agreement the amount of the loan, with accrued interest, should be secured by a lien on said policy and be deductible from the face amount thereof, if the policy were in effect at the death of the insured, and that no part of said loan was ever repaid.

The first defense also sets up that the monthly payments which Horace E. Hopkins failed to make and the indebtedness, because of said loan, were properly chargeable against the policy and charged against it by defendant, and if the insured had died during the month of December, 1930, there would have been due the plaintiff the face amount of the policy less the amount of these charges, but that insured lived until November 20, 1931, without making any additional payments of premiums and dues, and defendant pleads, by way of conclusion from the facts alleged, that under its provisions said policy had lapsed, and defendant was not liable to plaintiff.

In its second defense, after incorporating by reference the allegations of its first defense, defendant sets out the eighteenth paragraph of the policy, providing, among other things, that the constitution and by-laws of defendant form a part of the insurance contract, and pleads certain sections of said constitution and by-laws relating to compliance by members of the order with its rules, "Suspension for nonpayment of dues" and "Reinstatement," under which defendant contends that insured, having been suspended for nonpayment of premiums and local assessments, and not having been reinstated prior to his death, it is not liable on the insurance contract.

Defendant's third defense, after adopting the allegations in its first and second defenses, sets out verbatim the nonforfeiture and automatic nonforfeiture provisions of the policy, providing in substance that when all payments required under the policy shall have been made for a period of three years, and default thereafter occurs, the member shall be entitled to certain options, based

upon the table of surrender values of the policy, either to surrender the contract for its cash value, or to accept paid-up life insurance, or to have the insurance continue as term insurance for its face amount, if the option is exercised within 30 days after default, and that if the member fails to notify the order of his election of any of these options within 30 days after default, the insurance shall not be forfeited, "but the cash value, at date of default, shall automatically be applied to the payment of premiums as they successively fall due, and the insurance under this contract shall be continued in full force for its face amount so long as the cash value remaining to the credit of this contract suffices to pay a single monthly premium." The nonforfeiture provision pleaded defines "cash value" under the various options.

In its third defense defendant also pleads that the insured did not, within 30 days after March 31, 1930 (when he defaulted on the monthly payment due for March, 1930) exercise either of the options under the nonforfeiture provision, and that therefore the automatic nonforfeiture provision, a part of which is above quoted, became applicable, and the cash value of this policy was automatically applied to the payment of premiums as they became due, "less the deductions due this defendant for the principal amount of said loan, interest thereon, amounts due for monthly premiums or assessments and dues not paid thereon and interest on said monthly assessments not paid thereon"; that on this basis the insurance contract was continued in force until December 31, 1930, when it lapsed and expired.

Plaintiff filed no reply to defendant's answer, but filed a motion for judgment on the pleadings, and three days thereafter there was filed defendant's motion for judgment on the pleadings and a stipulation by the parties as to the facts, which was followed shortly by an additional stipulation as to facts.

Thereafter, according to the record, the case was regularly set for trial on September 23, 1933, on which date the parties appeared, announced "ready for trial," waived trial by jury, and the case was submitted to the court on the respective motions for judgment on the pleadings, and the stipulations of the parties, resulting in the judgment for plaintiff in the sum of $1,769.19, with interest at the rate of 6 per cent. per annum from date of judgment herein appealed from.

The original stipulation as to facts, after reciting that the contract of insurance attached to plaintiff's petition was, in substance, the policy of insurance issued to the insured, contains the following clauses pertinent to this appeal:

"9. That said Horace E. Hopkins, under the terms and conditions as set out in condition No. 8, titled 'Loans,' of said policy of life insurance. did, on the 19th day of August, 1929, borrow on said policy, and on said date the Insurance Company did execute a loan to the said Horace E. Hopkins in the amount of $164.96.

"10. That on August 11, 1931, the aforementioned loan in the amount of $164,96, plus interest thereon, was charged off against said policy without notice to Horace E. Hopkins, or the plaintiff herein, by the Grand Lodge of the Ancient Order of United Workmen of the State of Oklahoma, a corporation.

"11. That said Horace E. Hopkins was by the defendant, The Grand Lodge of the Ancient Order of United Workmen of the State of Oklahoma, a corporation, declared in default on the payment of premiums and local dues in the sum of $10.69 on the 31st day of March, 1930.

"12. That said Horace E. Hopkins died November 20, 1931, at Kingfisher, Oklahoma.

"13. That from March 31, 1930, to November 20, 1931, said Horace E. Hopkins failed to remit to The Grand Lodge of the Ancient Order of United Workmen of the State of Oklahoma, a corporation, the monthly premiums as they came due on said policy of insurance.

"14. That the said Horace E. Hopkins during his lifetime did not exercise any election or right accruing to him under the provisions of said policy titled 'nonforfeiture,' and numbered 3.

"15. That under the table of extended insurance values set out in said policy Horace E. Hopkins at the time of his default in payment of premiums and dues March 31, 1930, had a reserve accumulation of $324.55.

"16. That at no time before the death of Horace E. Hopkins was any notice mailed to him as provided for under subdivision (a) of condition No. 8 in said insurance contract titled 'Loans.'

"17. That any loan and any premiums unpaid or delinquent under the terms of said policy are deductible from the value of said policy, as provided for in the written terms of the policy itself.

"18. That the said Horace E. Hopkins, subsequent to March 31, 1930, did not at any time make any application or apply for reinstatement of his policy under the pro-

visions of section 9 as set forth in said policy."

The additional stipulation merely provided that the constitution and by-laws of the defendant might be considered in evidence, subject to the ruling of the court, as to their materiality, etc., upon proper objection by plaintiff (no such objection is shown), and that both parties waived proof of the contents of the application for the policy of insurance involved. No evidence was offered other than these stipulations.

In its judgment, the trial court, in effect, found the facts as stipulated, but held that the loan from defendant to insured was never legally charged off against the policy; that while the insured failed to make the monthly payments due March 31, 1930, and thereafter, and the policy was suspended, the reserve accumulation of $324.55 under insured's policy, on March 31, 1930, was sufficient, under the automatic nonforfeiture clause of the policy, to continue it in effect until the death of the insured on November 20, 1931, and that defendant was liable for the face amount of the policy, less the amount of the unpaid monthly premiums and dues and the loan on the policy, with accrued interest thereon, and rendered judgment accordingly. No serious objection is made on this appeal to the computation made in arriving at the amount of this judgment, so that if the judgment is otherwise proper, we will assume the computation to be correct.

Defendant makes ten assignments of error, but in its brief sets out only the second, third, fourth, fifth, seventh, eighth and tenth assignments of error, and does not argue or support by authorities its tenth assignment of error other than by reference to its argument under the other assignments of error set out and argued. The assignments of error not set out in defendant's brief or not argued or supported by authorities are waived, and will therefore not be considered. Griggs v. Reeser Motor Co., 159 Okla. 279, 16 P. (2d) 252, 254; Mosely v. Boyd, 167 Okla. 485, 30 P. (2d) 897, 899.

Defendant groups and argues together its second, third, and fourth assignments of error, which are as follows:

"(2) That the trial court erred in overruling the general and special demurrer filed by the plaintiff in error, defendant below, to the petition of the defendant in error, plaintiff below.

"(3) That the trial court erred in overruling the motion filed by the plaintiff in error, defendant below, for judgment upon the pleadings herein.

"(4) That the trial court erred in sustaining the motion filed by the defendant in error, plaintiff below, for judgment upon the pleadings herein."

Defendant's second assignment of error, in so far as it relates to the order overruling its general demurrer, is not well taken. Plaintiff's petition, in addition to alleging the execution and delivery of the policy, with the plaintiff as the designated beneficiary, the death of the insured and denial of liability by the defendant, alleged substantially that the insured and plaintiff had fully complied with all of the terms and provisions of this policy of insurance on their part. This was sufficient as against a general demurrer. Section 234, O. S. 1931; Cahill v. Pine Creek Oil Co., 40 Okla. 176, 136 P. 1100, 1101; Mid-Continent Life Insurance Co. v. Tackett, 149 Okla. 147, 299 P. 862, 863, and authorities there cited.

As to defendant's special demurrer, there was first incorporated therein a general demurrer on the ground that plaintiff's petition did not state facts sufficient to constitute a cause of action, with a plea that plaintiff's general allegations that the insured and she had complied with the terms and provisions of said policy stated mere conclusions of law. This was followed by requests that plaintiff be required to plead certain facts, and that if it was the purpose of plaintiff to plead waiver or estoppel against the defendant, she be required to set out certain other facts, and the special demurrer also adopts, by reference, the allegations made in defendant's motion to require plaintiff to make her petition more definite and certain. In so far as this so-called special demurrer amounts to a general demurrer and raises the point that plaintiff's plea of performance is only a conclusion of law, it is without merit, under the authorities above cited. To the extent that it goes beyond a general demurrer, it fails to state any statutory ground of demurrer and seeks to raise alleged defects not appearing on the face of the petition, and was properly overruled under the provisions of section 201, O. S. 1931.

Defendant next argues that the trial court erred in overruling its motion for judgment on the pleadings, and reference is made to the fact that plaintiff filed no reply. Defendant admitted its execution and delivery of the policy to the insured, with plaintiff as beneficiary, the death of the insured, as alleged by plaintiff, and, in effect, denied plaintiff's general allegations that all of

the obligations on the part of the insured and the plaintiff had been performed, setting up that the insured had failed to make certain monthly payments due under the policy and had obtained a loan on the policy which he had failed to repay. The facts alleged by defendant in its answer, as distinguished from its conclusions of law, are only evidential facts, by way of answer to plaintiff's petition, to which a reply need not be filed. Denman v. Brennamen, 48 Okla. 566, 149 P. 1105, 1108; Farmers State Bank of Keen, 66 Okla. 62, 167 P. 207; McKee v. Dickerson, 122 Okla. 240, 254 P. 57, 58.

It is true that defendant in its answer pleads certain provisions of the policy and of its constitution and by-laws, from which, in connection with the other facts alleged, it states its conclusions of law, that it was not liable to plaintiff. These conclusions of law were, of course, not admitted by plaintiff's failure to file a reply. Hutchings v. Zumbrunn, 86 Okla. 226, 208 P. 224, 226, 227. Even if it were true that a reply by plaintiff was necessary, defendant waived any objection on this point, by joining in a stipulation as to the facts, many of which were in support of the allegations of its answer, without insisting upon a hearing in advance of trial of its motion for judgment on the pleadings, and by going to trial on the facts so stipulated. Holt v. Holt, 23 Okla. 639, 102 P. 187, 191; Allison v. Bryan, 26 Okla. 520, 109 P. 934, 936, 30 L. R. A. (N. S.) 146, 138 Am. St. Rep. 988; Foster v. Wooley, 93 Okla. 53, 220 P. 938, 940.

Defendant's fourth assignment of error is that the court erred in sustaining plaintiff's motion for judgment on the pleadings. The record does not disclose that plaintiff's motion for judgment on the pleadings was considered separate and apart from the stipulations as to the facts. The judgment recites that the court reviewed all the pleadings filed and considered both motions filed for judgment on the pleadings by plaintiff and defendant, and also considered and reviewed the stipulation filed by the parties, and after so doing rendered judgment. Obviously, the court took into consideration the facts stipulated as plainly appears from the judgment itself, so that if any error was committed it was in the application of the law to the facts stipulated, which will be discussed later.

Defendant, in its demurrer and its argument under these assignments of error, makes repeated reference to the alleged failure by plaintiff to plead waiver or estoppel, and it may not be amiss to refer briefly to this contention. As we view it, there is no question of waiver or estoppel involved. Plaintiff, among other things, pleaded the policy and that the insured and she had complied with its provisions. Defendant pleaded the policy and certain provisions of its constitution and by-laws, and certain facts, such as the failure of the insured to repay the loan and to make certain monthly payments provided by the policy. The facts which never appear to have been seriously in dispute and were substantially as alleged by defendant, were stipulated, including the policy and the constitution and by-laws of the defendant. The question then before the court was not whether plaintiff could defeat the effect of the facts pleaded by defendant, by a plea of other facts showing that defendant had waived or was estopped to claim a result which would otherwise follow from the facts which it had pleaded, but whether, notwithstanding the facts so pleaded and stipulated, under the provisions of the policy and the constitution and by-laws of the defendant, plaintiff was entitled to recover.

This brings us to a consideration of defendant's fifth, seventh and eighth assignments of error which are as follows:

"(5) That the judgment rendered in favor of the defendant in error, plaintiff below, upon the stipulation and agreement as to the facts herein is not sustained by said stipulation and agreement, and is contrary thereto."

"(7) That said judgment in favor of the defendant in error, plaintiff below, is contrary to law."

"(8) That the trial court erred in rendering judgment against the plaintiff in error, defendant below."

These assignments raise essentially the same questions of law and will be considered together. It is stipulated that under the table of extended insurance values set out in the policy, the insured had, on March 31, 1930, when he made default in the monthly payment of premiums and dues for March, 1930, a reserve accumulation of $324.55. At that time he was indebted to defendant upon the loan which it had made to him, in the sum of $164.96, with interest thereon at the rate of 5 per cent. from August 19, 1929. He died November 20, 1931. If under the provisions of the policy the amount of the indebtedness created by this loan was deductible from the reserve accumulation of $324.55, in determining the amount available to pay premiums for extended insurance, there did not remain an

amount sufficient to continue the policy in effect until the death of the insured. On the other hand, if the amount due by reason of said loan was not deductible from the amount of the reserve accumulation of $324.55 in determining the amount available to pay premiums for extended term insurance, there was a sufficient cash value to the credit of the policy to pay the monthly premiums and local dues maturing prior to the death of the insured.

The insured had made the monthly payments required under the policy from March 31, 1925, to, and including, the one for February, 1930, or for more than three years. When he defaulted on March 31, 1930, the following provisions of the policy became applicable:

"(3) Nonforfeiture. When all payments required under this contract shall have been duly made for a period of thirty-six months (three years) or more, and default thereafter occurs in any payment when due, the member shall be entitled to any one of the following options (a), (b) or (c), as shown respectively in the table of surrender values included herewith, said option to be exercised within thirty days after such default:

"(a) To surrender this contract for its cash value; (b) to surrender this contract for paid-up life insurance; or (c) to have the insurance hereunder continued as term insurance for its face amount.

"The cash value under option (a) shall be the entire reserve for the face amount of this contract, less a surrender charge of one per cent. of such face amount; and the paid-up life insurance under option (b), or the extended term insurance under option (c) shall be the equivalent of the same cash value applied as a net single premium at the attained age of the member at the date of default.

"(4) Automatic Nonforfeiture. If the member fails to notify the Order of his selection of any one of the above options (a), (b) or (c) within thirty days after default in any required payment, the insurance hereunder shall nevertheless not be forfeited, but the cash value at date of default shall automatically be applied to the payment of premiums as they successively fall due, and the insurance under this contract shall be continued in full force for its face amount so long as the cash value remaining to the credit of this contract suffices to pay a single monthly premium."

The provisions of the policy relating to loans and reinstatement are as follows:

"(8) Loans. At any time while this contract of insurance is in force, provided at least three full years payments have been made hereon and no such required payment is in default, the grand lodge will advance on delivery to it of this contract and on the sole security thereof, the same amount as would have been available as a cash value if this contract had been surrendered as provided in option (a).

"(a) Interest on the loan shall be at the rate of five per cent. per annum, and shall be payable at the end of each policy year; and this interest, if not paid when due, shall be added to the existing loan and shall bear interest at the same rate. The loan with accrued interest may be repaid to the grand lodge at any time. Failure to repay any such loan shall not avoid this contract, unless the total indebtedness hereon to the grand lodge shall equal or exceed the cash value at the time of such failure; but if, at any time, such indebtedness, together with accrued interest thereon, shall equal or exceed the then cash value of this contract, the contract shall thereupon become void; provided, that thirty days' previous notice of such voiding shall be mailed to the member at his last known address as it appears of record upon the records of the Grand Lodge. (Emphasis our.)

"Any indebtedness to the grand lodge existing under this contract shall be deducted in any settlement thereof.

"(9) Reinstatement. Unless it shall have been surrendered for its cash value, or unless the term for which the insurance has been extended shall have expired, this contract may be reinstated at any time within three years from the date of default in any payment required hereunder, upon evidence of insurability satisfactory to the grand lodge, and upon payment of all arrearages with interest thereon at the rate of five per cent. per annum; provided, that any indebtedness existing at the date of default be first paid or reinstated with interest from that date at five per cent. per annum."

It is stipulated that insured did not exercise any election or right accruing to him under the nonforfeiture provisions of the policy, and it follows that the fourth clause of the policy, entitled "Automatic Nonforfeiture," applied. It will be observed that under the automatic nonforfeiture clause, upon the failure of the insured to elect within 30 days after default either of options (a), (b), or (c), under the nonforfeiture clause, the insurance under the policy is not forfeited but the cash value at date of default is automatically applied to the payment of premiums as they successively fall due, and the insurance is continued "in full force for its face amount so long as the cash value remaining to the

credit of this contract suffices to pay a single monthly premium." The term "cash value" is expressly defined. under the nonforfeiture clause, to be, under option (a) (when the contract is surrendered for its cash value) "the entire reserve for the face amount of this contract, less a surrender charge of one per cent. of such face amount," and this clause provides that "the paid-up life insurance under option (b), or the extended term insurance under option (c), shall be the equivalent of the same cash value applied as a net single premium at the attained age of the member at the date of default." Under the automatic nonforfeiture clause, where, as here, the insured failed to notify the order of his selection of either of the options (a), (b), or (c), within 30 days after default, the cash value at date of default is automatically applied to the payment of premiums as they fall due. Obviously, there could be no surrender charge under this provision where the policy is not surrendered. The nonforfeiture and automatic nonforfeiture provisions which relate to the same general subject-matter must, under elementary rules of construction, be construed together, and when so construed we find that the term "cash value," as expressly defined under the third clause of the policy, is used with the same meaning in the fourth clause thereof relating to automatic nonforfeiture, with the exception that the surrender charge does not apply where there has been no surrender of the policy, and therefore, under the automatic nonforfeiture provision, the term "cash value" means the entire reserve accumulation, stipulated to be $324.55.

Defendant refers to the language in the automatic nonforfeiture provision that "this contract shall be continued in full force for its face amount so long as the cash value remaining to the credit of this contract suffices to pay a single monthly premium," and argues that the use of the expression "to the credit of this contract" implies that the term "cash value" means the reserve less the amount of the loan indebtedness on the policy. This argument necessarily assumes that the amount of the loan indebtedness is deductible in arriving at the cash value remaining to the credit of the contract, which the contract does not authorize. The expression referred to may be applied with equal propriety to the reserve value of the policy without deducting therefrom the indebtedness on account of the loan on the policy. It will be observed that the language is not the net cash value remaining to the credit of this contract, or

the cash value remaining to the credit of the contract after deducting the indebtedness thereon, so that to give this language the meaning contended for by defendant would necessarily require that we read into the contract, by construction, a meaning which it does not naturally possess.

Neither is there anything in the provisions of the policy relating to loans and to reinstatement to justify the contention that the amount of the loan is deductible from the cash reserve in determining the cash value applicable to the purchase of extended term insurance under the automatic nonforfeiture provision. While it appears from the stipulation that, prior to the death of the insured, the aggregate amount of the loan indebtedness, and the amounts due for premiums and local dues payable in March, 1930, and thereafter, exceeded the cash reserve of the policy, the provision in this clause relating to loans is to the effect that the contract shall not terminate unless the total indebtedness thereon, with accrued interest, shall equal or exceed the cash value, and unless, also, "30 days' previous notice of such voiding shall be mailed to the member at his last-known address as it appears of record upon the records of the grand lodge." Defendant concedes that this notice was not given and does not contend that the contract was terminated under that provision.

Defendant's position is that the policy expressly provides that the loan indebtedness thereon is deductible from the cash value in determining the amount available to purchase extended insurance, but that if there is no express provision to that effect, nevertheless, such deduction should be made. We find no provision in the policy which expressly, or by necessary implication, authorizes this deduction, and no case is cited where such deduction was made in the absence of an express provision or statute requiring it.

Defendant has cited no Oklahoma case, and we have found none, passing on the exact question here involved. Defendant has cited numerous cases from other jurisdictions and the cases of Missouri State Life Insurance Co. v. Westervelt, 120 Okla. 24, 250 P. 113, and Kansas City Life Ins. Co. v. Harper, 90 Okla. 116, 214 P. 924, wherein the amount of existing indebtedness against the policy was deducted from the cash reserve in arriving at the amount available, in case of default, to purchase extended term insurance. In all of these cases, by the terms of the policies themselves, or by statute, the indebtedness on

the policies was deductible from the cash reserve in determining the amount available to purchase such insurance. In so far as these cases are pertinent to the instant case, they are against defendant, for they tend to show that when it is the intent of the insurer to make such deductions it is so expressly provided in the policy.

On the other hand, in the few cases in which the facts were similar to the case at bar, the courts have refused to read into the policy a deduction of indebtedness from the cash reserve not expressly provided. The rule in such cases is stated in Couch's Cyclopedia of Insurance Law, vol. 3, sec. 647. A., p. 2093, as follows:

" 'Where the policy allows three months after default in which to elect between the cash value, term insurance or paid-up endowment, and provides for extended insurance in the event of failure to elect, and the only provision referring to the effect of failure to repay a loan is that it shall not avoid the policy unless the total indebtedness shall exceed the loan value, and until thirty-one days after notice shall have been mailed by the company, loans cannot be deducted in determining the amount available for the purchase of extended insurance, where the company has not given the notice which would permit it to declare a forfeiture, even though the indebtedness exceeds the loan value; and the insurer is liable, when the insured dies within such extended period, for the full face value of the policy, less the amount of the loan and unpaid premium.' "

In Francis v. Prudential Insurance Company of America (Pa.) 90 Atl. 205, a similar question was involved. There the policy was issued on January 27, 1899, and premiums were paid until January 27, 1904, after which the insured paid no premiums and died on May 20, 1909. There was a sufficient cash accumulation to purchase, under a provision of the policy, a nonparticipating paid-up term policy for a term of five years and 78 days, or beyond the date of the death of the insured. However, on April 27, 1904, the company loaned the insured $86.27, which, if deducted from the cash reserve, would have caused the policy to lapse before the insured's death. The policy contained a loan provision to the effect that if the loan, with accrued interest, should become equal to the legal reserve for the policy, the company could demand immediate payment thereof, and if the same was not paid within 30 days after due notice by mail, or otherwise, that said policy should become forfeited and void. This notice was not given. The policy contained no provision reducing the term of extended insurance on account of loans to the insured. Under these circumstances, the Supreme Court of Pennsylvania held:

"Where a life insurance policy provided that if, at the end of 5 years, the policy should become forfeited, the company would write in lieu thereof, without any action of the insured, a paid-up policy for 5 years and 78 days, and where, less than 5 years before his death and 5 years from the date of the policy, insured stopped paying premiums, a sum which he then owed the company for loans could not, in the absence of any provision therefor, reduce the duration of the extended insurance. * * *

"Ambiguous conditions in an insurance policy should be construed most strongly against the insurer."

In the Francis Case, in discussing and rejecting a contention similar to that made by the defendant here, the court says:

"We cannot agree that the term of extended insurance is affected by the loan provisions of the policy, which do not in terms, nor as we view it by necessary implication, have reference to the table of extended insurance. If appellant intended to reduce the term of extended insurance on account of loans to the insured, it would have been an easy matter to have so provided in the policy, and the inference from its failure to do so is that it did not so intend. The policy is in the language of the insurance company, and the presumption is that its express provisions contain all the conditions intended to be imposed. Certainly the insured had the right to assume that the policy meant what it said, and that conditions not expressed did not exist. As to the loans appellant safeguarded its interests by provisions for forfeiture, and for the deduction of indebtedness, together with interest accumulated and accrued upon payment of the amount otherwise due the insured under the terms of the policy. There is no provision in the policy for the reduction of the term of extended insurance on account of indebtedness to the insurer, and, in the absence · of such a provision, courts are not at liberty to read into the contract what it does not contain. Again, the rule that insurance contracts shall be taken most strongly against the insurer applies, and when the provisions as to loans are read in the light of this rule, the argument of appellant on this branch of the case fails."

In Carter v. Metropolitan Life Insurance Co. (Pa.) 107 Atl. 847, the court, in discussing a life insurance policy and a state of facts substantially identical with those involved here, said:

"That the indebtedness of the insured equaled or exceeded the loan value is conceded, and defendant's right to forfeit the policy for that reason cannot be denied. Before doing so, however, something more than mere equality of indebtedness and cash value of the policy is required. Affirmative action on the part of the company must be taken by giving 31 days' notice of intention to avoid the policy by reason of nonpayment of the loan. In absence of such notice, forfeiture does not occur, and there is nothing to prevent the operation of the provision for extended insurance, whereby the policy remains in force for the full period of the extended insurance. Had the insurer intended that, in case of default, the cash value of the policy should be applied to cancel the indebtedness, and the policy thereby terminate if the latter equaled the former, it would have been a simple matter to have said so. In absence of such provision, the court will not read into the policy a requirement it does not contain."

However, defendant contends that the default of the insured in making monthly payments and the application of the cash value of the policy to purchase extended term insurance was a settlement of the contract, and refers to the final sentence of clause 8 of the policy, relating to loans, as follows:

"Any indebtedness to the grand lodge existing under this contract shall be deducted in any settlement thereof."

No authority is cited in support of this contention, and in our opinion such contention is not consistent with the other provisions of the policy itself. The succeeding clause of the policy relating to reinstatement provides that, unless the term for which the insurance has been extended has expired, the contract may be reinstated at any time within three years from the date of default in any payment required thereunder, upon certain conditions. Obviously, while the policy was being continued in force by the application of the cash reserve to the payment of monthly premiums and dues as they matured, with the right to the insured, upon complying with certain conditions, to have the policy reinstated, with all its incidents, there was no settlement of the policy. In addition, it will be observed that the language upon which this contention is based does not, in express terms, provide for the deduction of indebtedness of the insured to the defendant from the reserve accumulation, in computing the amount available to purchase extended term insurance in case of default in the payment of premiums. If the insurer had intended that the existing indebtedness against the policy should be deducted from the reserve accumulation existing on the date when the insured defaulted in the payment of premiums, in determining the cash value available to pay premiums for extended term insurance, it would have been a very easy matter to have so stated in the policy provisions concerning nonforfeiture and automatic nonforfeiture which contain an express definition of the term "cash value" as there used. Moreover, this would have been the natural place to have inserted such a provision. The fact that no such provision is inserted in the clauses of the policy dealing with nonforfeiture and automatic nonforfeiture, and defining "cash value" as the term is there used, is, to our mind, conclusive that the language of the policy hereinabove last quoted, found in the clause of the policy relating to loans, is not intended to apply to nonforfeiture and automatic nonforfeiture provisions of the policy; and that the deduction therein referred to means a deduction from the face amount of the policy, and we so hold.

Assuming that there is any doubt concerning the interpretation we have placed upon the language of the policy herein last quoted, the most that can be said for defendant's position is that such language is ambiguous, in which event the ambiguity must be resolved against defendant. A somewhat similar contention was decided adversely to the position of the defendant in Hay v. Meridian Life & Trust Co. (Ind. App.) 101 N. E. 651, where the court held:

"A life insurance policy provided that after three years' premiums had been paid, if insured defaulted in the payment of premiums, the company would continue the policy in force for its full amount for the term specified in the table of values for extended insurance. The table of values after specifying the extended insurance and loan and cash surrender values of the policy for each year it was kept in force, provided that any indebtedness on account of the policy outstanding at time of settlement would reduce the values specified therein in the proportion that such indebtedness bore to the 'amount upon which the above guaranties were based,' the extended insurance to be reduced proportionately in amount of insurance and not in the term of extension. Held that, the policy being ambiguous and having been prepared by the company, the amount upon which such guaranties were based would not be construed to mean the cash surrender value, but would be held to mean the face of the policy, and hence, insured having died within the period of extension, the beneficiary was entitled to the face of the policy less an indebtedness."

Defendant refers to clause 18 of the policy providing, inter alia, that the constitution and by-laws of the defendant shall form a part of the contract between defendant and insured, and sections 5 and 6 of article 9 of said constitution and by-laws are set out. Section 5 provides substantially that no liability for the payment of any money by defendant on any beneficiary certificate shall arise unless the member of the order named in the certificate is in good standing. Section 6 provides that upon the failure of any member to pay any assessment, per capita tax, or dues required of him by the constitution, by-laws, rules and regulations of the order, the beneficiary certificate issued to such member shall stand suspended and he shall cease to be a member until reinstated. Doubtless the constitution and by-laws of the order, in so far as applicable, form a part of the insurance contract. Damon Mut. Ben. Ass'n v. Hoffman, 169 Okla. 608, 37 P. (2d) 947.

Defendant, in this connection, contends that the insured, having failed to pay the monthly premiums and dues, and having been suspended, this in itself prevented insured from being in good standing, and that the policy, or certificate, issued by the defendant to the insured was not binding upon it. In support of this contention, defendant cites the following cases: Gilmore v. Grand Temple, etc. (Tex. Civ. App.) 222 S. W. 294; Kennedy v. Supreme Tent, etc., (Wash.) 170 P. 371; Roberts v. Brotherhood, etc., (Ky.) 160 S. W. 924; Tabor v. Modern W. of A. (Tex. Civ. App.) 163 S. W. 324; Modern Brotherhood, etc., v. Beshara, 42 Okla. 684, 142 P. 1014.

All of these cases are readily distinguishable from the case at bar. It does not appear in any of them that the certificates there involved contain provisions for nonforfeiture and automatic nonforfeiture such as that contained in the policy here involved, nor does it appear that at the time of default the insured had made a sufficient number of payments to make applicable such provisions if they existed. Sections 5 and 6 of article 9 of defendant's constitution and by-laws must be construed in connection with all of the other provisions of the contract, including the nonforfeiture and automatic nonforfeiture provisions of the policy, and other provisions of the constitution and by-laws, so as to give effect to each part of the contract if reasonably practicable, each clause helping to interpret the other. Section 9465, O. S. 1931; Friend v. Southern Life Insurance Co., 80 Okla 76, 194 P. 204, 206.

Obviously, sections 5 and 6 are rules applicable where the insured has not made sufficient payments to call into effect, in case of default, the nonforfeiture and automatic nonforfeiture provisions of the policy. The construction contended for by the defendant would emasculate these provisions, and that such was not the expressed intent of the contracting parties appears not only from these very explicit provisions of the policy itself, providing, among other things, for extended term insurance, in case of default in payment of premiums, but it also appears from the proviso in the next section of the constitution and by-laws of defendant succeeding the sections cited by it, that policies of the kind here involved could be reinstated within three years from date of default "unless the term for which the insurance has been extended shall have expired," plainly indicating that it was not the intent of the by-laws to negative the provisions for extended insurance. Moreover, defendant, both in its answer and in its brief places the same construction upon the contract which we do, for it states that if the insured had died in December, 1930, the plaintiff would have been entitled to the full amount of the policy less the deductions properly chargeable against the same, thereby definitely taking the position that this policy was not automatically forfeited on March 31, 1930, by the failure of the insured to make the payment then due.

Defendant devotes considerable space in its brief to the distinction between "forfeiting" and "lapsing" and to the statutes and decisions of this state applicable to pledges and chattel mortgage and the foreclosure thereof. We are unable to see the relevancy of this discussion. The vital question here is whether, under the terms of the contract involved, the amount of the loan against the policy was deductible from the cash reserve in determining the amount available to purchase extended term insurance. The contract does not so provide.

Conceding only for the purpose of discussion that, under the provisions of the contract cited by defendant, there may be some doubt concerning our statement that this insurance contract does not provide for this deduction, these provisions are ambiguous, in which case the general rule applies that ambiguity in the terms of an insurance contract must be resolved against the insurer. Continental Casualty Co. v. Goodnature, 170 Okla. 477, 41 P. (2d) 77, 80.

Defendant complains that under the judgment of the trial court the policy was held

to be in effect after the indebtedness for unpaid premiums and dues, and the amount of the loan exceeded the cash reserve, and that such a holding if universally applied would bankrupt it and similar companies. If such a practical result would follow, it would afford no reason for the court to change the contract between the parties, but, in any event, defendant and companies making similar contracts are amply protected by the provision that when the amount of the indebtedness on the policy exceeds the cash value thereof, such policy can be terminated by giving the insured 30 days' notice.

We have carefully examined all the authorities cited by defendant and find that none of them justifies the conclusion that there is any error in the judgment of the trial court. Finding no error in that judgment, the same is hereby affirmed.

Plaintiff calls attention to the supersedeas bond appearing in the case-made, executed by defendant and New York Casualty Company, as surety, in favor of the plaintiff in the sum of $3,600, and prays judgment from this court against this surety, to which she is entitled. United Fig & Date Co. v. Carroll, Brough, Robinson & Humphrey, 116 Okla. 82, 243 P. 211.

It is therefore ordered, decreed, and adjudged that defendant in error have and recover judgment against New York Casualty Company for the sum of $1,769.19, with interest thereon at the rate of 6 per cent. per annum from September 23, 1933, and for the costs in the court below and in this court.

The Supreme Court acknowledges the aid of Attorneys Edmund Lashley, R. A. Kleinschmidt, and Gentry Lee in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Lashley and approved by Mr. Kleinschmidt and Mr. Lee, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BUSBY, and PHELPS, JJ., concur.