## MISSOURI STATE LIFE INS. CO. v. WESTERVELT.

No. 16099—Opinion Filed Oct. 19, 1926.

1. **Insurance — Life Policy—Provision for Automatic Continuance as Term Insurance Where Premium not Paid.**

The provision in a life insurance policy for automatic continuance or term insurance means that if the premium is not paid on the due date, or within the days of grace, the cash value of the policy as fixed by the table of values, under said provision, less any indebtedness, is applied to continue the policy in force for a definite length of time, reckoned from the due date of the unpaid premium, to be determined by the amount of said cash value and the time in days or months or years it will carry the policy, according to the premium rate.

2. **Same—Provision Inoperative Where Unpaid Premium and Indebtedness Exceed Cash Value of Policy.**

The provision in a life insurance policy for an automatic premium loan, based upon the cash value of the policy, fixed by the table of values in the face of the policy, at the end of the policy year, commencing from the due date of the unpaid premium, less the amount of said unpaid premium and any indebtedness against the policy, is inoperative where said premium and the outstanding indebtedness, is equal to or in excess of said cash value.

3. **Same — Provision for Reinstatement—Showing of Insurability.**

The provision in a life insurance policy for reinstatement, conditioned upon evidence of insurability satisfactory to the company and payment of the overdue premium and all indebtedness with interest, must be construed together as to time, and the evidence of insurability is not to be extended beyond the date of such payments.

4. **Same—Estoppel of Insurer to Question Insurability.**

Where a life insurance company, by letter, invites the insured to make application to reinstate a lapsed policy, and, for this purpose, sends him a printed form to be signed and returned, and the printed form states that the insured is in good health, and said insured signs said application and returns the same to the company with a note to satisfy the unpaid premium and the company returns the application and makes no objection as to the statement of the insured's health, but writes him that it cannot accept the note in full payment of the premium, but a note and part cash payment, stating the amount, will be satisfactory, and the insured complies with the proposition, sending note and part cash, which are accepted and retained by the company for an indefinite length of time, the transaction of reinstatement is complete with the payment of the money and the company is estopped to demand a medical examination and a report of good health of a later date as an additional prerequisite to reinstatement.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; Wm. H. Zwick, Judge.

Action by Mary I. Westervelt against the Missouri State Life Insurance Company to enforce two life insurance policies. Judgment for plaintiff, and defendant appeals. Affirmed.

Keaton, Wells & Johnston, and Jourdan & English, for plaintiff in error.

Ross & Thurman, John F. Butler, and Leon S. Hirsh, for defendant in error.

Opinion by THREADGILL, C. The appeal is from a judgment of the district court of Oklahoma county against plaintiff in error, as defendant, and in favor of defendant in error, as plaintiff, on two life insurance policies of $1,000 each on the life of Jewel E. Westervelt in favor of plaintiff, his mother.

The first policy described in the petition, No. 178212, was dated May 13, 1918, and designated as "Exhibit A." The second was No. 124007, dated May 18, 1916, and designated "Exhibit D." These policies were 20-payment life policies. There was no difference in their provisions except in the date issued and the amount of the premiums, which on the first was $27.02, and on the second $25.51. These premiums were payable annually in advance on May 13th and 18th, respectively, for each succeeding year from date, with a provision for 31 days of grace in which to pay the premium without interest charges. There was another provision that, after the premiums were paid for the first two policy years, "if any subsequent premium is not paid on the date when due and remains unpaid during the period of grace, the insured shall, during said period," have certain options. One was to surrender the policy for its cash value.

the other was to surrender the policy for a paid-up life policy. The third was "to let the insurance for the face amount thereof continue as term insurance, reckoned from the due date of the unpaid premium," and this third provision was to take place automatically if the first two options were not exercised.

Another provision was designated as "Automatic Premium Loans," and was as follows:

"The company will advance any and all premiums becoming due hereon and remaining unpaid on the last day of the period of grace hereunder, and will charge such; premium or premiums as a loan against this policy, together with interest at six per cent. per annum in advance to the end of the current policy year, if written request from the insured on the company's form has been received at the home office, while this policy is in full force; provided, that the company will not so advance and charge up a premium, if the amount thereof and interest thereon, as aforesaid, together with any outstanding indebtedness hereon to the company, shall exceed the cash value of this policy at the end of the period which such premiums, if advanced or paid, would cover. Interest on any such loan shall, for subsequent policy years, be payable annually in advance at six per cent. per annum. Such advancing and charging up of premiums will be discontinued at any time on receipt at the home office of the insured's written request therefor. Premium loans hereon shall be subject to the same term and conditions as any loan granted hereon by the company under the cash loan privileges above set forth. While this policy is thus carried in force, the insured may, without medical examination, resume payment of premiums."

After the issues were joined, the cause was tried to the court upon an agreed statement of facts, and from this statement we learn that the insured paid his premiums on policy No. 178212 up to and including the premium of $27.02 due May 13, 1921, which was for the policy year ending May 13, 1922, and he paid the premiums on policy No. 124007 up to and including the premium of $25.51 due May 18, 1921, which was for the policy year ending May 18, 1922. When the respective premiums became due on May 13 and 18, 1922, for the ensuing policy year, the insured failed to pay the same within said dates, or within the 31 days' grace period. The policies were declared to be lapsed.

Before this time, on August 11, 1921, the assured borrowed on policy No. 178212 the sum of $55 and paid the interest on the same at 6 per cent. for one year, and on the same date he borrowed on policy No. 124007 the sum of $94, and paid the interest on the same at 6 per cent. for one year. These loans were never paid by the insured. We are further informed, from the agreed statement of facts, that certain letters passed between the insured and the defendant, after the policies were declared lapsed, relative to reviving or reinstating them. These letters were a part of the record as exhibits, and plaintiff contends that this correspondence proves a reinstatement of the policies, while defendant contends to the contrary. The insured died March 9, 1923, and upon notice of death the defendant denied liability and this action was brought. Plaintiff pleaded the provisions of the policy and compliance with the same, and contended that under the automatic provision for term insurance, as well as the "automatic premium loans" provision, the policies did not lapse, but continued in force although the insured failed to pay the premiums due in May, 1922.

1. The first question, therefore, that engages our attention, is whether or not these policies, or either of them, under option 3, automatically continued as term insurance, reckoned from the due dates of the unpaid premiums, being in May, 1922. The answer to this question depends upon the cash value of the policies at that time. The three options were based upon the cash value of the policy. This value is determined by the table of nonforfeiture values. less any indebtedness against the policy. According to this table, as set out in policy No. 178212, its cash value on May 13, 1922, the due date of the premium and during the 31 days of grace, was $58 less the loan of August 11, 1921, of $55, making the cash value $3, and it was agreed in the statement of facts that this $3 was sufficient to buy term insurance under this option for 126 days, or for a period ending September 19, 1922. The other policy, No. 124007, according to its table, had a cash value on May 8, 1922, and during the 31 days of grace, of $115, less the $94 loan of August 11, 1921, leaving its cash value $21, which was sufficient to pay for term insurance for approximately 286 days from May 18, 1922, or for a period ending February 28, 1923. It appears from these figures, and under the automatic term insurance provision, that the policies did not lapse for nonpayment of the May, 1922, premiums. However, it appears that neither party is contending for these provisions of the policies. They would not avail the plaintiff anything because the insurance provided was in lieu of all other, and the terms expired before the death of the insured, and, as a matter of fact, defendant does not rely upon

these provisions in the policies as a defense.

2. The second question presented is, whether or not there were any loan values that were available to pay the May, 1922, premiums, under the "automatic premium loans" provision of the policies. A table, in policy No. 178212, fixes its cash value at the end of the policy year commencing May 13, 1922, at $79, but since there was a loan against the policy of $55, and the premium of $27.02 was unpaid, making $82.02, which said loan provision in the policy required to be paid before the $79 cash value should be applied under said provision, there was nothing to loan. Under policy No. 124007, the cash value at the end of the policy year, May 18, 1923, was $115, the loan outstanding of August 11, 1921, was $94, and the premium of $25.51 due May 18, 1922, was unpaid, making the sum of $119.51, that was required to be paid before the cash value of $115 was available as an automatic loan, under the provisions of the policy, leaving nothing to loan. The language of the policy is plain and needs no construction. It is just a matter of simple calculation. We must, therefore, conclude that the policies were not continued in force under the "automatic premium loans" provision.

3. The third question presented is more difficult of determination. That is, whether or not the policies were reinstated by agreement. It appears that on July 3, 1922, the insured made application on the defendant's printed forms to reinstate the said policies. It also appears from a letter of the defendant of July 17, 1922, acknowledging receipt of said application, that the insured enclosed a note as payment of the arrears on the policies, and defendant stated in the letter that it would not accept the note in settlement of the total amount due as requested by the insured, "but," quoting the language of the letter, "only too glad to offer the following proposition whereby reinstatement can be made under each of the policies." Then comes the proposition which included four policies, but we will only quote the language of the letter applicable to the two under consideration," as follows:

"In connection with policy No. 124007, we are herewith enclosing a note for $20 due October 18, 1922, which if properly completed and returned to this office with a remittance of $11.15, will enable us to take action on the application for reinstatement of this policy. The remittance of $11.15 will be used as follows; $5.51 in part payment of the past due premium and the balance of $5.64 in payment of the loan interest. * * *

"Under policy No. 178212, we are enclosing a note for $21.50 due October 13, 1922, which if properly completed by the insured and returned to this office with a remittance of $8.82, will enable us to give the matter of reviving this insurance our attention. A remittance of $8.82 will be used in part payment of the past due premium.

"We are anxious to see these policies reinstated, and hope you will be in a position to let us have the above-mentioned remittance at an early date."

In response to this letter and proposition of defendant, on July 24, 1922, the insured forwarded to defendant his check for the money required, and also the notes. The check was cashed and the notes retained by defendant. There were other letters written after this transaction: One on August 3, 1922, acknowledging receipt of the application for reinstatement, which it appears had already been acknowledged by the letter of July 17th. There had been no other applications made except the application referred to in said letter of July 17th. This letter of August 3rd also stated that the applications were being acted upon, and that he would be duly advised as to the action taken, and that the money sent had been credited to his account and was held subject to his order, as if his applications for reinstatement of the policies had not been considered and a definite proposition made for their reinstatement. Another letter written by the defendant September 15, 1922, was mailed to the insured, advising him that it would be necessary for him to pass a medical examination without expense to the company, and the report sent in to be considered in connection with the applications. In the meantime, after the applications for reinstatement had been received by the company, and the proposition made and complied with by the insured, his health failed by a fatal illness from which he never recovered. Another letter of October 11, 1922, informed the insured that his applications for reinstatement were declined for failure to undergo a medical examination, and his notes and a part of the money he had sent the company, in compliance with their proposition of July 17th, were returned to him.

The question for us to decide is whether or not the proposition made in the letter of July 17th, was such a proposition that, when accepted and complied with by the insured, as it was, when he executed the notes and sent them and the money as required, bound defendant to a reinstatement of the policies. The conclusions reached in our mind, in this matter, are not without some doubt, and yet the transaction has every appearance of a complete offer and acceptance. Section 5008, Compiled Statutes 1921, provides:

"Performance of the conditions of a proposal, or the acceptance of a consideration offered with a proposal, is an acceptance of the proposal."

We think the letters, written after the money and notes required were received by the defendant, were incompetent to prove that the proposition for reinstatement was not closed.

The policy contained the provision for this reinstatement upon the payment of premiums and the furnishing of evidence of insurability satisfactory to the company. In making his applications of July 3rd for reinstatement, the insured undertook to cover both of these provisions by sending his note for the full amount of the premiums due and by stating that he was in good health. The forms used for making the application were printed forms furnished by the company. The defendant made no objection as to his showing of health, but refused to accept the notes for the full payments on the policies, and so it retained possession of the applications and made him a counterproposition for part of the payments to be by notes and part in cash, which was accepted and complied with by the insured. We think this completed the transaction for reinstatement; at least the proposition, as made by the company, in connection with the proposition made by the insured on the printed forms of the company for reinstatement, together with the reinstatement provision contained in the policy, were sufficient to lead the insured to believe that the transaction was closed. In the case of Northrup v. Colter, 150 Mo. App. 639, 131 S. W. 364, the Missouri court states:

"The doctrine that where a proposition sufficiently clear is submitted to another to act upon and the person to whom it is submitted makes such statement, or does such act with respect thereto as would lead an ordinarily prudent person, acting in good faith, to believe that the proposition has been accepted, and the proposer proceeds to the fulfillment of the conditions and terms imposed, a contract may be found from such conduct, notwithstanding the secret intentions of the party, claimed to have accepted the proposition, proceeds in accordance with the principles of natural justice, and is akin to an estoppel in pais."

See, also, Olcott v. McClure, 50 Ind. App. 79, 98 N. E. 82; and Wilson v. Martin (Ga. App.) 109 S. E. 294.

In the case of National Life Insurance Co. v. Clayton, 70 Okla. 116, 173 Pac. 356, in holding against the insurance company on a strict construction of the requirements of

the policy contract, quoted with approval an excerpt from Insurance Company v. Eggleston, 96 U. S. 572, 24 L. Ed. 841, as follows:

"Any agreement, declaration, or course of action, on the part of any insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

See, also, Liverpool, London & Globe Insurance Co. v. Cargill, 44 Okla. 735, 145 Pac. 1134; American National Life Insurance Co. v. Smith, 88 Okla. 90, 211 Pac. 1029; Sovereign Camp W. O. W. v. Tam, 90 Okla. 196, 216 Pac. 660.

It must be further observed that the company had full knowledge that the policies were being carried automatically as term insurance, or had lapsed, and it had the right, in either case, to refuse to reinstate them to their original status without a medical examination on the part of the insured satisfactory to it, yet it made its proposition to reinstate, based on the notes and money without saying a word about the health of the insured, and it received the notes and money in response to its proposition, which, to say the least, is a strong circumstance to be considered against the contention of the defendant that its proposition was open for further negotiations as to the insured's health. We think the rule should be that the provision in a life insurance policy for reinstatement, conditioned upon evidence of insurability to the company and payment of the overdue premium and all indebtedness with interest, must be construed together as to time, and the evidence of insurability is not to be extended beyond the date of such payment. In the case of Madsen v. Prudential Insurance Co., a case decided by the Court of Appeals of Missouri, the state in which defendant is domiciled, 185 S. W. 1168, and 1170, the court uses this language:

"It is said by the Supreme Court in a case where the policy had lapsed by its terms for nonpayment of premiums: 'If the company does not wish the receipt of the premium to have the effect in law of reinstating the policy or of preventing a forfeiture, it must refuse to receive the money until the health certificate is filed and until the president and medical director act.' Andrus v. Insurance Assn., 168 Mo. 151, 164, 165, 67 S. W. 582."

See, also, Life & Casualty Insurance Co. v. Eubanks (Ala. App.) 94 South. 198; McQuillan v. Mutual Reserve Fund Life Association. 112 Wis. 665, 87 N. W. 1069, 59 L. R. A. 233.

4. The language of defendant's letter of July 17th, making its counterproposition to the insured, to the effect that when the notes and money required were sent to the company, it would be able to take action on the application for reinstatement, under policy No. 124007, or able to give the matter of reviving the policy under No. 178212, could mean but one thing to the insured, and that was, that the company would examine the application and consider the matter of the insured's health up to the date of receiving the notes and money sent, and thereupon reinstate the insurance. There was nothing else to take action upon. Instead of doing this, it appears the company expressed no opinion upon the showing of health contained in the application, or up to the date of receiving the notes and money, but after waiting some time, required a showing as to health at a time that could not be contemplated under the provisions of the policies, and this was unfair to the insured and cannot be upheld by the court.

We think the rule as to taking the money before demanding a health certificate, as a prerequisite to reinstatement, binding the insurance company without a medical examination, should be specially applied to the instant case, since the defendant furnished the forms for the reinstatement applications, which contained a statement that the insured was in good health and said nothing about a medical examination, and the insured complied with the forms to the letter, and defendant received the forms, and, not being satisfied as to the payment of the premiums proposed by the insured, retained the applications and made a counterproposition as to the amount and form of payment without expressing any dissatisfaction as to the showing of health, contained in the application, and the insured complied with this counterproposition and sent the money required and defendant kept the money and notes for a considerable length of time before making any additional proposition as to health of insured.

The judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.

Note.—See under (1) 37 C. J. p. 413, §92; p. 508, §255 (Anno); 14 R. C. L. p. 990. (2) 32 C. J. p. 1167, § 280 (Anno). (3) 37 C. J. p. 498, §240. (4) 37 C. J. p. 499, §240.