## ATLAS LIFE INS. CO. v. SPITLER.

No. 26270.    Dec. 22, 1936.

Logan Stephenson, Q. M. Dickason, and Russell F. Hunt, for plaintiff in error.

Edgerton & Vickers, for defendant in error.

PER CURIAM. This appeal seeks the construction of an automatic term extension provision in a contract of life insurance. The action was originally instituted in the district court of Creek county by Viola Spitler as plaintiff against the Atlas Life Insurance Company, a corporation, as defendant. In this opinion we will refer to the parties in the same order as they appeared in the trial court.

The facts are not in dispute. Trial was had to the court without the intervention of a jury, upon stipulation of the parties, documentary evidence and the testimony of certain witnesses relative to the meaning and effect of a clause contained in the contract of insurance. Judgment below was for the plaintiff, and the defendant appeals.

The record discloses substantially the following state of facts: On December 5, 1925, the defendant, in consideration of an annual premium of $60.28, issued a policy of insur-ance on its Form 237-B, whereby it insured the life of one Henry S. Spitler in the principal sum of $2,500. The policy also contained provisions relative to disability and double indemnity, which are not involved in this appeal. Viola Spitler was named as beneficiary under the policy in the event of the death of the insured. The insured paid the first and the succeeding annual premiums on the policy up to and including the premium which fell due December 15, 1932, but neglected and failed to pay any part of the premium which became due on December 15, 1933. The insured had at various times borrowed on the security of the policy, and on the date of default in payment of premium owed thereon the sum of $214.39. The cash surrender value of the policy on the date of default was the sum of $217.50, thus leaving a net balance to the credit of the policy in the sum of $3.11 when default occurred. The options in the policy providing for cash surrender value and paid-up insurance were not exercised by the insured, and therefore the policy was continued in force for its face amount less the indebtedness due thereon as term insurance under the automatic extension provision of the policy. The insured died on January 27, 1934, at the age of 41 years; due proof of death was furnished to the defendant on forms satisfactory to it. On December 15, 1933, the $3.11 remaining to the credit of the policy would have, at the attained age of the insured, if applied as a single net premium, continued the policy for its face amount, less the indebtedness, as term insurance for a period of 51 days, or until February 4, 1934. The defendant construed the policy to provide for on'y even months' insurance, and applied $1.83 of the net reserve and continued the policy in effect until January 15, 1934, and held the remaining sum of $1.28 to the credit of the insured, which sum was tendered to and refused by the plaintiff on the day of the trial.

The controversy between the parties arises out of the construction which they each seek to place upon the portions of the contract providing for automatic extended insurance. The policy is quite lengthy and it is necessary to consider only the provisions thereof denominated "surrender value" and "basis of values." These provisions read as follows:

"Surrender Values. After three full years' premums shall have been paid the owner within thirty-one days after any default in payment of premiums but not later, may surrender this policy:

"(a) For its cash surrender va'ue less any indebtedness to the Company hereon, or

"(b) For paid-up insurance payable at

the same time and under the same conditions as this policy with the right to loan and surrender values computed in accordance with the 'Basis of Values' provision: or,

"(c) If not so surrendered, the face amount less any indebtedness, shall automatically continue as term insurance for such term as is hereinafter provided, but without the right to loans."

Included therein is shown a table of loan and surrender values for the third to the 20th policy years, inclusive. This is followed by: "Basis of Values.

"The cash surrender value shall equal the reserve hereon at date of default, less not more than 2½ per cent. of the face amount of this policy. The amount of paid-up insurance, or the term for which the insurance will be continued, shall be such as the cash surrender value less any indebtedness to the Company hereon will purchase as a net single premium at the attained age of the insured at date of default according to the table of mortality and interest rate named below, fractions of a month and fractions of a dollar of insurance omitted. The reserve shall be computed upon the American Experience Table of Mortality with interest at 3½ per cent. per annum in accordance with the twenty payment life modification of the preliminary term method of valuation; subject to such modification the first year's insurance under this policy is term insurance."

The defendant contends that the language used in the last above-quoted provision is clear and unambiguous and susceptible of but one construction, namely, that the automatic extended insurance was thereby limited to even months. The plaintiff, on the contrary, contends that the language is uncertain, ambiguous, and technical in nature, and that therefore it is susceptible of at least two constructions, and that consequently the construction most favorable to the insured should be adopted. The trial court concurred in the viewpoint of the plaintiff, and permitted the introduction of expert evidence to explain the language used and its meaning. Defendant contends that this permitted the plaintiff to alter and vary a written contract by parol testimony, and that this was error.

As stated in 14 R. C. L. pp. 925, 926:

"An insurance policy is a contract and the rules established for the construction of written instruments apply to contracts of insurance. * * * The different provisions of a contract of insurance must be so construed, if it can be reasonably done, as to give effect to each.; and where two interpretations equally fair may be made, that which allows the greater indemnity will prevail."

As we have said in Brown v. Connecticut Fire Ins. Co., 52 Okla. 392, 153 P. 173:

"A contract in writing, if its terms are free from doubt or ambiguity, must be permitted to speak for itself, and cannot by the courts, at the instance of one of the parties, be altered or contradicted by parol evidence, unless in case of fraud or mutual mistake of facts, and this principle is applicable to contracts of insurance."

In the contract now under consideration the crucial language is contained in a sentence under "Basis of Values," which reads as follows:

"The amount of paid-up insurance, or the term for which the insurance will be continued, shall be such as the cash surrender value less any indebtedness to the Company hereon will purchase as a net single premium at the attained age of the insured at date of default according to the table of mortality and interest rate named below, fractions of a month and fractions of a dollar of insurance omitted."

If the above-quoted sentence is given its grammatical construction, it will be noted that the clause, "fractions of a month and fractions of a dollar of insurance omitted," is a parenthetical clause which refers to and explains the participial phrase which immediately precedes it, and that thereby the methods to be employed in solving the previously stated equation are limited and restricted, but that the answer to be obtained by the computation is not limited unless the factors employed in making the computations would necessarily require an answer in even terms. There is no showing that this would be the necessary, logical, and inevitable result in every instance, and the language used does not convey and compel such conclusion, but merely leaves the result to computation and prescribes the method and manner of making such computations. In order to render the language used susceptible of the construction placed thereon by defendant, it would be necessary to ignore the plain language used and the grammatical construction thereof, and to supply words and to reconstruct the sentence. If the defendant intended the sentence to have the meaning and effect for which it now contends, in drawing the contract it could have easily, by the choice of apt words, explicitly and unmistakably so provided. This, however, it did not see fit to do, and we are inclined to the opinion that the defendant when drawing the contract did not intend to place such construction on the language used. We think that this is made manifest both by failure of the defendant to specifically and explicitly provide in the con-

tract that only even months of term insurance would be given the insured and further by reason of failure to make any provisions for or to take into account any balance which might exist in favor of the insured in cases similar to the present one. It will be noted in the above-quoted provision of the contract that it is expressly provided that the amount of paid-up insurance or the term of continued insurance shall be such as the cash surrender value will purchase as a net single premium, thus clearly anticipating the expenditure of the entire remaining value of the policy for new insurance. This in our opinion negatives the theory and construction for which the defendant now contends. If, however, the language used in the policy and above quoted is fairly susceptible of any other construction, then the construction most favorable to the insured should be adopted. As we have said in the case of Friend v. Southern States Life Ins. Co., 80 Okla. 76, 194 P. 204:

"The second cardinal rule to be followed is: If a policy of insurance is susceptible of two constructions, the one is to be adopted which is most favorable to the insured. Taylor v. Insurance Company of North America, 25 Okla. 92. 105 P. 354; Federal Life Insurance Co. v. Lewis, 76 Okla. 142, 183 P. 975; Standard Accident Ins. Co. v. Hite, Adm'r, 37 Okla. 305, 132 P. 333."

This is also the rule in the federal courts. Brooklyn L. Ins. Co. v. Dutcher, 95 U. S. 269, 24 L. Ed. 410; Aschenbrenner v. U. S. Fidelity & Guaranty Co., 292 U. S. 80, 78 L. Ed. 1137.

Apart from any construction that may be given to the language used in the policy under consideration, we think that there is another reason why the judgment of the trial court should be sustained. If the provisions in the policy had the effect for which defendant contends, then the same would limit the term of automatic extended insurance to a period less than provided by the reserve at the date of default of the policy and would violate the express statutory provisions of this state. As said in Crouch on Insurance, vol. 3, par. 638:

"Fundamentally, provisions for paid-up or extended insurance, surrender value or other benefit to the insured upon termination of the original contract, undoubtedly are in furtherance of public interest and welfare and will be upheld when uniform, fair and in keeping with all applicable statutory regulations. This, however, does not mean that all contracts or agreements with respect to paid-up and extended insurance, surrender value, etc., are valid. * * * Thus, a statutory provision, such for example, as a requirement that an insurance policy shall provide for an unconditional surrender value, cannot be satisfied by a provision which is conditional."

Section 10524, O. S. 1931, provides in part as follows:

"No policy of life insurance shall be issued or delivered in this state or be issued by a life insurance company organized under the laws of this state unless the same shall at least provide in substance the following: * * *

"Eighth. That in event of default in premium payments after premiums shall have been paid for three years, the insured shall be entitled to a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy. * * *

"Tenth. That if in event of default in premium payments, the value of the policy shall be applied to the purchase of other insurance."

It will be noted from the above-quoted sections of the statute that it is the legislative intent that the insured should have the full value of the reserve of his policy at the date of default applied to the purchase of other insurance whether paid-up or extended term. As said in 14 R. C. L. p. 995:

"The parties to a contract of insurance cannot, by their contract, either directly or indirectly, waive the provisions of a statute providing for extended insurance on default in payment of premiums."

In the case of New York Life Ins. Co. v. Noble, 34 Okla. 103, 124 P. 612, we said:

"We do not consider it necessary to set out the various provisions of the policy, or of the supplemental contracts or of the loan contract, for whatever they are, relative to the lapsing or forfeiture of the policy, they yield to the law governing such cases."

The statute, as we construe it, contemplates and requires, when premiums have been paid for three years on a policy of life insurance, that upon default in payment of any subsequent premium the insured shall be entitled to a stipulated form of insurance, the net value of which will be at least equal to the reserve at the date of default on the policy. In the case now at bar the insured was entitled to automatically extended term insurance, and the net reserve on his policy was $3.11, and had this sum been applied as a single net premium to the purchase of term insurance, it would have furnished such insurance for 51 days, and therefore have extended the insurance beyond the date of the death of the insured. We hold that it was the mandatory duty of the defendant to apply the entire $3.11 and not

merely $1.83 of said sum in the purchase of extended term insurance for the policyholder, and that when it failed to do so, it omitted to carry out its statutory and contractual obligation.

Conceding, without deciding, that the admission of parol evidence to explain the contract was incompetent and erroneous, such would not, under the record here, constitute a violation of any substantial statutory or constitutional rights of the defendant, and hence must be held harmless under the provisions of section 3206, O. S. 1931.

We have carefully read the entire record and find that the trial court reached the correct conclusion and rendered the proper judgment in this action. Under these circumstances, the judgment will be affirmed, even though the trial court may have been wrong in the reasons assigned for entering the judgment. See James v. Coleman, 64 Okla. 99, 166 P. 210.

The plaintiff has asked for judgment on the supersedeas bond given by the defendant on appeal. It appears that this bond in the sum of $4,575 was executed by Standard Accident Insurance Company as surety. The bond is in the usual form and is incorporated in the case-made and is conditioned to abide the judgment, pay the condemnation money if the same is affirmed, and pay the costs. We are of the opinion that plaintiff is entitled to, and she is hereby given, judgment against said surety in the sum of $2,285.61, with interest thereon at the rate of 6 per cent. per annum from March 12, 1934, and for all costs of this action.

The judgment of the trial court is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, PHELPS, CORN, and GIBSON, JJ., concur. RILEY and WELCH, JJ., absent.