## NEW YORK LIFE INS. CO. v. FEDERAL NAT. BANK OF SHAWNEE, OKL.

### No. 2857.

Circuit Court of Appeals, Tenth Circuit.

May 15, 1944.

Rehearing Denied July 3, 1944.

V. P. Crowe, of Oklahoma City, Okl. (Ferdinand H. Pease, of New York City, and Embry, Johnson, Crowe, Tolbert & Shelton, of Oklahoma City, Okl., on the brief), for appellant.

John L. Goode, of Shawnee, Okl., and John F. Sharp, of Oklahoma City, Okl. (Mark Goode, of Shawnee, Okl., on the brief), for appellee.

Before PHILLIPS and HUXMAN, Circuit Judges, and RICE, District Judge.

PHILLIPS, Circuit Judge.

On February 10, 1919, the New York Life Insurance Company[1] issued a policy of ordinary life insurance on the life of Patrick H. Adams[2] in the sum of $25,000. The first annual premium was paid thereon. On June 25, 1919, it was converted into two policies, one for $5,000 and one for $20,000. On December 20, 1924, the insured assigned the $20,000 policy[3] to The Federal National Bank of Shawnee, Oklahoma.[4] The effective date and the anniversary of the assigned policy by its terms was February 10, 1919. The annual premium of $821.20 was payable in advance. On May 1, 1922, by an agreement in writing, the premium-paying date was changed to November 10, 1922, and the sum of $640.60 was paid to carry the insurance from February 10, 1922, to November 10, 1922. The agreement provided that the annual premiums should thereafter be paid in advance on November 10 of each year, and that all other terms and conditions of the assigned policy should remain unchanged. Thereafter, premiums were regularly paid until the annual premium which became due November 10, 1929.

On November 10, 1929, the assigned policy was encumbered by a lien of $2,940, bearing interest at the rate of six per cent per annum, on which interest in the sum of $176.40 was then due. On December 9, 1929, the bank paid the Insurance Company interest in the sum of $176.40 and $80.00 for the privileges extended by a note, called a "blue note," executed by the bank to the Insurance Company. The payment of the $80.00 and the execution of the blue note gave the insured the option until January 10, 1930, to pay the blue note with interest, and thereby satisfy the balance of the annual premium due November 10, 1929. Neither the blue note nor the premium falling due on November 10, 1929, was paid. On January 9, 1930, the bank paid to the Insurance Company on the loan against the assigned policy the sum of $2,454.19, and shortly thereafter, assigned to the Insurance Company all dividends to the credit of the assigned policy to be applied on the balance due on the loan. The bank's payment of $2,454.19, together with the assigned dividends, repaid the loan in full with interest. This left no credit to the assigned policy, except the reserve.

The failure to pay the blue note and thus satisfy the premium requirement due November 10, 1929, was not accidental. It was an intentional lapse of the assigned policy by the bank.

On May 8, 1930, the Oklahoma Branch of the Insurance Company received and thereafter delivered to the bank the following statement:

"May 5, 1930.
"Federal National Bank, Shawnee, Oklahoma.
Dear Sirs:

| Policy No. | Due Date of premium which remains un-paid | Insurance automatically continued until | Amount of continued Insurance |
|---|---|---|---|
| 6,427,611 | 11-10-29 | 7-30-41 | $20,000 |

Patrick H. Adams

Application for reinstatement, after default in payment of the premium specified above, not having been made, notice is hereby given that pursuant to the terms of the policy the value of the policy has been applied to purchase continued insurance as stated above.
Very truly yours,
Arthur Hunter,
Second Vice-President and Chief Actuary."

The assigned policy contained the following provisions:

"This Policy takes effect as of the Tenth day of February Nineteen hundred and nineteen, which day is the anniversary of the policy * * *."

"The Cash Surrender Value shall be the reserve on the face of the Policy at the end of the insurance year or, in event of default, at the date of default * * *, plus any dividends standing to the credit of the Policy, * * *. Such reserve will be computed on the basis of the American Table of Mortality and interest at three per cent, and the amount of paid-up insurance under (2) and the term of the continued insurance under (3) will be computed on the same basis at the attained age of the Insured on the date of default."

---

[1] Hereinafter called the Insurance Company.

[2] Hereinafter called the insured.

[3] The $20,000 policy will be hereinafter referred to as the assigned policy.

[4] Hereinafter called the bank.

Following the provisions above quoted there was set forth in the assigned policy a table showing the cash surrender value for each $1,000 of the face amount, paid-up life insurance for each $1,000 of the face amount, and the period of continued insurance in years and days after the assigned policy had been in force for three years and for each subsequent year, to and including 25 years. The table is based on the assumption that the premiums have been paid in full for the number of years stated, that there is no indebtedness to the company, and no dividends standing to the credit of the assigned policy. According to the table, after the assigned policy had been in force ten years the amount of continued insurance would be 10 years, 346 days, and after it had been in force eleven years the amount of continued insurance would be 11 years, 108 days.

The insured died March 9, 1941. The bank brought this action on the assigned policy. From a judgment for the bank, the Insurance Company has appealed.

The Insurance Company denied liability on the ground that the continued insurance terminated November 22, 1940. Insured's fifty-fifth birthday was November 13, 1929. The date of default was November 10, 1929.

At the trial the Insurance Company offered evidence that the statement of May 5, 1930, forwarded to the branch office and delivered to the bank was made out by a clerk in the Home Office of the Insurance Company; that the clerk in making up the statement erred in that he used 54 as the attained age of the insured, whereas the attained age of the insured was 55, and that the continued insurance, computed in accordance with the terms of the assigned policy at age 55, terminated November 22, 1940.

The trial court found that the Insurance Company was estopped to assert that the continued insurance expired prior to the death of the insured. We deem it unnecessary to pass upon that issue.

The assigned policy provides that the continued insurance will be computed on the basis of the American Table of Mortality and interest at three per cent, and the attained age of the insured on the date of default. It will be noted that the assigned meaning thereof. Thus with reference to policy does not read "attained age at nearest birthday." The application, a copy of which was attached to, and by reference made a part of, the contract of insurance, requires a statement of "age nearest birthday." The provision for total and permanent disability benefits contains the following clause: "on which the Insured's age at nearest birthday is 60 years." The provision for waiver of premium, in the event of total and permanent disability, contains the following sentence: "Any premium due on or after the anniversary of the Policy on which the age of the Insured at nearest birthday is 60." Thus, it will be seen that where the parties intended age to be computed on the basis of the nearest birthday, it made express provision therefor in the assigned policy. It made no such express provision with respect to the phrase "attained age" in the provision for computing reserve and continued insurance.

The Insurance Company offered testimony that it was the practice of the Insurance Company and other old-line insurance companies to construe the phrase "attained age" in computing reserve values and continued insurance as meaning "nearest age at the date of default." But the Assistant Actuary of the Insurance Company, who testified to such practice, testified that he did not know the general custom of insurance companies in Oklahoma with respect to determining attained age in computing reserve values and continued insurance.

The trial court found that the assigned policy is an Oklahoma contract. This finding is not challenged by the Insurance Company. It follows that the law of Oklahoma controls as to the interpretation of the assigned policy.[5]

The rule prevailing in Oklahoma with reference to the interpretation of insurance policies is stated in New York Life Ins. Co. v. Morgan, 187 Okl. 214, 101 P.2d 826, 829, as follows:

"Insurance policies are contracts. They are prepared by the companies, which issue them. Except in matters where the language thereof is prescribed by statute (a situation not involved in the case at bar)

5 Mutual Life Ins. Co. v. Johnson, 293 U.S. 335, 339, 55 S.Ct. 154, 79 L.Ed. 398; New York Life Ins. Co. v. Jackson, 304 U.S. 261, 58 S.Ct. 871, 82 L.Ed. 1329; Rosenthal v. New York Life Ins. Co., 304 U.S. 263, 58 S.Ct. 874, 82 L.Ed. 1330; Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290.

the company is responsible for the terms of the policy and any uncertainty in the such ambiguity, the company is the 'party who caused the uncertainty to exist' within the meaning of sec. 9478, O.S. 1931, 15 Okl. St.Ann. § 170, and by the direction of that statute, the contract should be 'interpreted' most strongly against it. This court has uniformly held that where an insurance contract is susceptible of two or more constructions, that meaning must be attributed to the language employed which is most favorable to the insured. Continental Casualty Co. v. Goodnature, 170 Okl. 477, 41 P.2d 77; Wilson v. Mid-Continental Life Ins. Co., 159 Okl. 191, 14 P.2d 945, 84 A.L.R. 386; Bankers Reserve Life Co. v. Rice, 99 Okl. 184, 226 P. 324; Atlas Life Ins. Co. v. Spitler, 178 Okl. 537, 63 P.2d 82."

In Watson v. Loyal Union Life Ass'n of Muskogee, 143 Okl. 4, 286 P. 888, the court construed a statute of Oklahoma providing that articles of association of mutual benefit societies should state "extreme limit of age of persons to whom benefit certificates may be issued, which limit of age shall not exceed fifty-five (55) years," 36 O.S. 1941 § 692, and held that a person was not over 55 years of age until his fifth-sixth birthday. In Wilson v. Mid-Continental Life Ins. Co. of Oklahoma City, 159 Okl. 191, 14 P.2d 945, 946, 84 A.L.R. 386, the court construed a provision of an accident policy which provided " 'The insurance under this policy shall not cover any person under the age of 18 years nor over the age of 65 years.' " The insured died from accident on October 19, 1928. He reached his sixty-fifth birthday on February 22, 1928. In holding that the insured had not reached the age of 66 at the time of his death, the court said:

"It appears from the petition and exhibits that the insured reached his sixty-fifth birthday on February 22, 1928, during the period covered by the last renewal receipt, and that he had not reached his sixty-sixth birthday at the time of the accident and death. * * * In the case of Watson v. Loyal Union Life Ass'n, 143 Okl. 4, 286 P. 888, this court said in the syllabus: 'A person is not over 55 years of age, within the meaning of section 2, chapter 32, S.L. 1925 [36 O.S. 1941 § 692], until he arrives at the age of 56.' And in the body of the opinion this court said: 'A person is ordinarily not considered over 55 years of age

until he arrives at the age of 56. It may safely be said that it is universally so undestood * * *.'

"Defendant in error * * * states with reference to construction to be placed upon the provision in the policy with reference to age that it 'should be given its ordinary and generally accepted meaning,' and in the case of Watson v. Loyal Union Life Ass'n, supra, this court has defined what is universally understood by the language used in the policy in question. It should be considered in years, as used in the policy, and not fractional parts thereof. * * *

"We are of the opinion that in construing the ordinary and generally accepted meaning of the language used in the policy, fractions of a year should not be considered, and that the insured having not reached his sixty-sixth birthday at the time of the accident and death, that he was therefore not 'over the age of 65 years,' and that the policy was in force at the time of his death, and that the demurrer should have been overruled."

In Watkins v. Metropolitan Life Ins. Co., 156 Kan. 27, 131 P.2d 722, 723, the court, in construing the meaning of the phrase "after attaining age 15," in two policies of life insurance, said:

"The usual understanding of the common phrase 'attaining age 15' is undoubtedly that the person has reached his fifteenth birthday. * * * The words 'after attaining age 15 and prior to attaining age 70' are all in common usage and seem to be entirely clear in meaning.

"Webster's New International Dictionary, 2d Ed., defines the word 'attain' as follows: 'To reach or come to by progression or motion; to arrive at; as, to attain a ripe old age.' "

The court cited Watson v. Loyal Union Life Ass'n of Muskogee, supra, with approval.

■ It would seem that, under the Oklahoma decisions, the "attained age" of a person past his fifty-fourth birthday is 54 until he has reached his fifty-fifth birthday. If it can be said that the phrase is susceptible to two constructions, that meaning must be attributed to it which is most favorable to the bank.

■ It is true, where the language of a contract is uncertain or ambiguous, evi-

dence of usage is admissible to show the intention of the parties. In order for a custom or usage to be available against a person, it must be so notorious as to affect him with knowledge of it, and raise the presumption that he dealt with reference to it, or he must be shown to have had actual knowledge of it. In Bower-Venus Grain Co. v. Norman Milling & Grain Co., 86 Okl. 152, 207 P. 297, 300, the court said:

"This court, in the case of Cherokee Grain Co. v. Elk City Flour Mills Co., 78 Okl. 120, 188 P. 1067, announced the rule in harmony with great weight of authority:

" 'Customs or usages may properly be received to ascertain and explain the meaning and intention of the parties to a contract, whether written or parol, the meaning of which could not be ascertained without the aid of such extrinsic evidence, where the parties knew of the existence of the custom or usage, and contracted in reference to it.' "[6]

Here, there was no proof that the insured had actual knowledge of any custom with respect to determining the attained age of an insured, or of facts from which it could be presumed that he had knowledge of any such custom and that he contracted with reference thereto. The proof falls far short of establishing a notorious, universal, and well-established custom.

It is urged that the table in the assigned policy is controlling. But the Insurance Company did not use that table when the clerk in the Home Office first computed the continued insurance, nor in the computation testified to by the Assistant Actuary of the Insurance Company. The assigned policy had been in effect ten years and nine months. The table contains no computation for fractional years.

We conclude, therefore, that the continued insurance should have been computed at age 54 and that the continued insurance did not expire until July 30, 1941.

The judgment is affirmed.

[6] See. also, Long v. Rudd, 185 Okl. 455, 94 P.2d 249; Talbot v. Mattox, Dawson & Posey Realty Co., 26 Okl. 298, 109 P. 128.

In the latter case, the court said:
"It seems to be well settled that a local custom which relates to the mode of performance, or is sought to be made a part of a contract, if established and known to the parties, may be proved; but proof of such custom, without establishing notice, unless such usage or custom is so notorious, universal, and well established that the knowledge of such party will be conclusively presumed, is not sufficient."