### ILLINOIS BANKERS LIFE ASSURANCE CO. v. TENNISON.

No. 33107. Nov. 29, 1949.

Rehearing Denied Jan. 17, 1950.

*213 P. 2d 848.*

348

L. W. Melburg, of Monmouth, Ill., John R. Miller and Roy T. Wildman, both of Sapulpa, and William F. Tucker and William H. Martin, both of Tulsa, for plaintiff in error.

R. E. Stephenson, of Sapulpa, for defendant in error.

CORN, J. Plaintiff brought this action to recover the face value ($2,000) of a policy of life insurance issued by defendant on October 15, 1942, to her husband, Mitchell V. Tennison, who died September 12, 1946. Defendant denied liability on the grounds the policy was not in effect at the date of insured's death because of default in payment of the annual premium of $41.80 due October 15, 1945.

The petition and supplemental petition, after making the customary allegations, also alleged: that at date of insured's death this policy had sufficient loan value to pay the current premium, as evidenced by defendant's correspondence with deceased; that the policy had ample cash value to cover the premium; defendant had no right to terminate the policy as long as it had cash or loan value; and until after thirty-one days' notice to insured that cash value had been applied and exhausted and defendant intended to terminate same; that no such notice had been given and policy was in effect at date of insured's death.

Defendant admitted issuance of the policy, but alleged same had lapsed by insured's failure to pay the premium (October 15, 1945) when due, or within thirty-one days thereafter, and that by terms of the policy same lapsed and was without value, except for that provided for under the following nonforfeiture provisions of the policy.

"Non-Forfeiture Provisions. After premiums have been paid for three full years, this policy being then in force, the insured may, during the period of thirty-one days following the due date of any unpaid premiums, select one of the following options:

"First: Cash Value. Surrender this policy properly receipted, at the home office of the company, for its cash value which shall be the sum indicated in the table of values for the number of years for which full annual premiums shall have been paid. Such cash values shall be at least equal to the sum which would otherwise be available for the purchase of Paid-Up Endowment Insurance, provided, that any indebtedness to the company on account of or secured by this policy shall be deducted from such cash value, and that the payment of said cash value may, at the option of the company, be deferred for not to exceed ninety days after application therefore is made.

"Second: Paid-Up Endowment Insurance. Surrender this policy, properly receipted, at the home office of the company and receive in exchange a policy of Paid-Up Non-Participating Endowment Insurance, payable in one sum and under the same condition as this policy, except as to premium payments. The amount of such Paid-Up

Endowment Insurance shall be such as the cash value of the policy will purchase as a net single premium at the attained age of the insured according to the American Experience table of Mortality and three and one-half per cent interest; provided, that if there be any indebtedness to the company on account of or secured by this policy, the amount of Paid-Up Endowment Insurance otherwise available shall be reduced in the ratio of such indebtedness to the net value of such Paid-Up Endowment Insurance.

"If the insured shall not surrender this policy for its cash value, as provided above in the first option, the policy will be automatically continued in force as a policy of Paid-Up Endowment Insurance as provided in the second option."

Defendant further alleged that three years premiums having been paid, this policy had a cash or loan value of $15 per thousand, or $30; that insured failed to elect either option provided under the policy, and same was automatically continued under the policy provisions as Paid-Up Endowment Insurance for $84, and defendant tendered such amount in settlement. Further, upon failure to pay premiums the policy lapsed thirty-one days after default, subject to reinstatement upon written application, evidence of insurability and payment of premiums, but that such requirements were not met and the policy was not reinstated.

Plaintiff filed reply, and thereafter filed motion for judgment upon the pleadings. Plaintiff's motion was based upon the theory that the allegations of defendant's answer, and the exhibits attached thereto, established existence of sufficient cash value in the policy to have discharged the past-due premium, which imposed a legal duty upon defendant to apply such value to payment of the premium due October 15, 1946.

In sustaining the motion and rendering judgment for the amount of the policy, less premium indebtedness, the trial court found there was sufficient cash or loan value to have extended the policy at least eight months, and application of the amount, plus three years premiums paid, would have extended the policy for the full year within which insured died, and it was the insurer's duty to apply such value and extend the policy in force so far as possible.

To reverse this judgment defendant urges: (1) Under terms of the policy, the same lapsed for nonpayment of premiums and was not reinstated and therefore was not in effect at date of insured's death; (2) under the nonforfeiture provisions of the policy, following lapse for nonpayment of premiums, insured, having failed to exercise the first option, the policy was continued automatically as a policy of paid-up endowment insurance.

In opposition to such contentions the plaintiff urges the correctness of the trial court's judgment upon the ground that the effect of certain provisions of our statutes, hereinafter set forth, was to provide automatic extended insurance to the extent of the cash or loan value of the policy after the date of default in payment of premiums.

Inasmuch as it is not contended that the policy ever was reinstated as a premium paying policy, it is necessary only to consider whether the following statutory provisions required defendant to apply the reserve value of the policy to extended insurance to prevent forfeiture of the policy as urged by plaintiff. The applicable portions of the statutes relied upon are:

36 O.S. 1941 §218 (7):

"No policy of life insurance shall be issued or delivered in this State or be issued by a life insurance company organized under the laws of this State unless the same shall at least provide in substance the following:

"Seventh. That after three full years' premiums have been paid, the company, at any time, while the policy is in force, will loan on the execution of a proper note or loan agreement by the insured and on proper assignment and

delivery of the polciy and on the sole security thereof, at a specified rate of interest, a sum equal to or at the option of the insured less than the reserve at the end of the current policy year on the policy and on the dividend additions thereto, if any (the policy to specify the mortality table and the rate of interest adopted for computing such reserve) less a specified percentage (not more than two and one-half) of the amount insured by the policy and of the dividend additions thereto, if any, and that the company will deduct from such loan value any existing indebtedness on or secured by the policy and by any unpaid balance of the premium for the current policy year, and may collect interest in advance on the loan to the end of the current policy year: Provided, that such loan may be deferred for not exceeding six months after the application therefor is made. No condition other than as herein provided shall be exacted as a prerequisite to any such loan. This provision shall not be required in term insurance, nor shall it apply to temporary insurance or pure endowment insurance, issued or granted in exchange for lapsed or surrendered policies."

36 O.S. 1941 §219 (4):

"No policy of life insurance shall be issued or delivered in this State or be issued by a life insurance company organized under the laws of this State, if it contains any of the following provisions:

"Fourth. A provision for the forfeiture of the policy for failure to prepay any loan on the policy or to pay interest on such loan while the total indebtedness on the policy is less than the loan value thereof."

Heuring v. Central States Life Insurance Co., 232 Mo. A. 731, 120 S.W. 2d 176; Cleaver v. Central States Life Insurance Co., 346 Mo. 548, 142 S.W. 2d 474; Atlas Life Insurance Co. v. Spitler, 178 Okla. 537, 63 P. 2d 82; Missouri State Life Insurance Co. v. Westervelt, 120 Okla. 24, 250 P. 113, and Friend v. Southern States Life Insurance Co., 80 Okla. 76, 194 P. 204, are cited and relied upon by plaintiff as supporting the proposition that defendant was required to apply the loan value of insured's policy toward payment of premiums. Examination of these cases discloses that they are not authority for plaintiff's argument, that our statutes required defendant to make application of the loan value to extend the policy, or that our statutes are to be construed as requiring all life insurance policies to contain automatic loan provisions. Such cases involved instances where the policies in question had a provision for automatic extended insurance.

Plaintiff argues that under section 218 (7), supra, automatic loan of the cash value to pay the premium was a part of· the insurance contract, and that section 219 (4), supra, prohibits forfeiture of ·any insurance contract, for failure to prepay a loan or interest thereon while the indebtedness is less than the loan value of the policy.

Plaintiff cites no decision from this court, and we know of none, requiring that an insurer incorporate into every policy of life insurance a provision for automatic loans to pay premiums. The most careful analysis of section 218, supra, reflects that such section prescribes the form of life insurance policies by prohibiting issuance of any policy which does not provide certain enumerated benefits. Such statutory requirements are merely an injunction on the insurer to include some automatic nonforfeiture provision in the policy. Subdivision seven only requires that every policy must contain a provision for policy loans, upon execution of a proper agreement by the insured, and defines the manner and conditions under which such loans be made. The loan must, of course, be based upon the loan value. No language in this section can be construed as affixing the automatic loan provision asserted by plaintiff to be required. Further, subdivision eight of this section provides the policy requirements for a stipulated form of insurance after default in payment of premiums, but makes no requirement as to the form thereof so long as the net value

is at least equal to the reserve at the date of default. No statutory expression appears requiring an insurer to incorporate into the insurance contract a provision for automatic extended insurance, and the only requirement of the statute, i.e., to provide for a stipulated form of insurance in event of default, was satisfied under the policy provisions heretofore set forth. That such is the purpose of this provision was established by our holding in Atlas Life Insurance Co. v. Spitler, supra, wherein we said, at p. 540 of 178 Okla.:

"The statute, as we construe it, contemplates and requires, when premiums have been paid for three years on a policy of life insurance, that upon default in payment of any subsequent premium the insured shall be entitled to a stipulated form of insurance, the net value of which will be at least equal to the reserve at the date of default on the policy."

Neither do we find it possible to read into subdivision four of section 219, supra, the construction sought to be placed thereon by plaintiff. Such section is only prohibitory of life insurance policies containing certain enumerated provisions, and subdivision four deals with forfeiture for failure to prepay a policy loan, or failure to pay interest on a loan where the indebtedness is less than the loan value of the policy. The entire section deals exclusively with the matters expressly prohibited and the language in no manner can be construed as providing for an automatic loan provision as urged by plaintiff.

Under the terms of the policy (heretofore quoted), if allowed to lapse after three years premiums had been paid, then insured, within thirty-one days from the date of premium default, was entitled to exercise either of the options allowed under the policy. If insured failed to exercise either of the options, then the policy was continued in force for the indicated amount of paid-up endowment insurance. Nothing in the policy provided automatic extended insurance in event of default, and our statutes, supra, made no such

requirement so long as the policy did satisfy the requirement that every policy provide a "stipulated form" of insurance equal to the net value of the reserve at the time of default. It is settled that the courts will not make a better contract for the parties than they saw fit to make, or alter their contract for the benefit of one. Federal Deposit Insurance Corporation v. Grim, 184 Okla. 275, 86 P. 2d 774. The interpretation sought by plaintiff herein could only result in our forming a new and different contract than that executed originally.

We conclude that the trial court erred in sustaining the motion for judgment on the pleadings in plaintiff's behalf.

The judgment is reversed and the cause remanded, with directions to the trial court to enter judgment for plaintiff for the amount of paid-up endowment insurance found to be due plaintiff under the terms of the policy.

DAVISON, C.J., and WELCH, GIBSON, LUTTRELL, HALLEY, JOHNSON, and O'NEAL, JJ., concur.