**FEDERAL NATIONAL BANK OF SHAWNEE, OKLAHOMA v. COMMISSIONER OF INTERNAL REVENUE.**

No. 3980.

United States Court of Appeals
Tenth Circuit.

Feb. 13, 1950.

John E. Marshall, Oklahoma City, Okl. (John L. Goode, Shawnee, Okl., on the brief), for petitioner.

Ellis N. Slack, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen. and A. F. Prescott and S. Dee Hanson, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

This is a petition to review a decision of the Tax Court of the United States. It involves a deficiency in corporate income tax asserted against the Federal National Bank of Shawnee, Oklahoma,[1] of $8,494.79 for the taxable year 1944.

On or about June 25, 1919, Patrick H. Adams assigned a $20,000 policy of life insurance, theretofore issued to him by the New York Life Insuraance Company, to the Security State Bank[2] of Shawnee, Oklahoma, as collateral security for indebtedness of Adams to the Security Bank.

Adams' indebtedness to the Security Bank in 1920 was between $40,000 and $50,000. On December 13, 1920, the State Bank Commissioner of Oklahoma declared the Security Bank insolvent, took charge of its books, records and assets and proceeded to wind up its affairs.

On December 14, 1920, the Guaranty State Bank[3] was organized and was chartered to do business as a state bank at Shawnee, Oklahoma. On that date the Bank Commissioner and the Guaranty Bank entered into a contract under which the Guaranty Bank purchased at face value assets of the Security Bank totaling $425,- 652.67, including loans and discounts of $350,000, and under which the Bank Commissioner guaranteed the payment of the $350,000 loans and discounts and the Guaranty Bank assumed and agreed to pay the liabilities of the Security Bank in the amount of $752,832.51. However, since the liabilities assumed were in excess of the assets purchased, the Bank Commissioner paid to the Guaranty Bank the difference of $327,179.84 in checks and warrants and all the other assets of the Security Bank were pledged to the Guaranty Bank as collateral to indemnify it against loss on the assets purchased. The Guaranty Bank fully performed its part of the contract. It was able to collect only $210,000 on the loans and discounts purchased, leaving $140,404.94 owing to the Guaranty Bank on the Bank Commissioner's guarantee. The Guaranty Bank made demand upon the Bank Commissioner for payment thereof, but due to insufficient funds in the Oklahoma Depositor's Guaranty Fund, the Bank Commissioner was unable to meet the obligation.

On July 10, 1922, an agreement was entered into between the Bank Commissioner and the Guaranty Bank whereby the latter accepted in full satisfaction of its claim against the Bank Commissioner $30,000 in cash and all the remaining assets of the Security Bank, then in the hands of the Guaranty Bank, including all collateral. One of the remaining assets of the Security Bank, then in the hands of the Guaranty Bank as collateral was the life insurance policy referred to above.

On March 24, 1923, the taxpayer was organized. It acquired all the assets and assumed all the liabilities of the Guaranty Bank. The transaction was a tax free reorganization.

In December, 1924, Adams assigned the policy to the taxpayer in consideration of the complete liquidation of his account with the taxpayer and the return to him of a mortgage of between $4,000 and $6,000, which he had delivered to the taxpayer as

---

1. Hereinafter called the taxpayer.
2. Hereinafter called Security Bank.
3. Hereinafter called the Guaranty Bank.

collateral to secure his open account with the taxpayer.

On November 10, 1922, the Guaranty Bank paid premiums on such policy in the amount of $821.20.

The taxpayer paid annual premiums on the policy in the amount of $821.20 on November 10 in each of the years 1923 to 1928, inclusive, and on November 10, 1929, it paid a premium on the policy of $80.

On November 10, 1929, the policy was incumbered by a lien of $2,940, bearing interest at the rate of six per cent per annum, on which interest in the sum of $176.40 was then due. On December 9, 1929, the taxpayer paid the Insurance Company interest in the sum of $176.40 and $80 for the privileges extended, by a note called a "blue note," executed by the taxpayer to the Insurance Company. The payment of $80 and the execution of the "blue note" gave the taxpayer the option until January 10, 1930, to pay the "blue note" with interest and thereby satisfy the payment of the annual premium due November 10, 1929.

Adams died March 9, 1941. The taxpayer brought an action against the Insurance Company on the policy and recovered a judgment for the face value of the policy with interest at six per cent, amounting to $23,942.36. On appeal this court affirmed the judgment, holding that the transactions between the taxpayer and the Insurance Company resulted in continued insurance computed at age 54, which did not expire until July 30, 1941. The cost of the litigation to enforce the policy was $4,297.12.[4]

In its return for 1944 the taxpayer reported the amount received on the judgment and the amount expended for legal services and expenses in enforcing the policy, but stated that the amount recovered did not constitute income.

In the deficiency notice the Commissioner added $19,654.24 to the taxpayer's gross income and stated:

"(a) During the year 1944, you received the proceeds of a life insurance policy on the life of Patrick H. Adams in the amount of $23,942.36 which was not included in gross income on your return. It has been determined that the insurance policy was acquired by you for a consideration, and that the entire amount of the proceeds therefrom, less legal fees and expenses totaling $4,297.12 expended in the collection of such proceeds, is includible in your gross income. Accordingly your income is increased $19,645.24.

"(b) Legal fees and expenses totaling $4,297.12, expended in collection of the insurance proceeds referred to above are disallowed as 'ordinary and necessary business expenses' as claimed and allowed as an exempt portion of the insurance proceeds. * * *"

The Commissioner did not find the amount of the consideration paid by the taxpayer for the assignment of the policy, nor the cost basis of the policy to the taxpayer; neither did he find that it was not possible to determine the cost basis of the policy to the taxpayer from the books and records of the taxpayer.

It is not possible for us to determine from the photostatic copies of the income tax returns for the years 1923 to 1929, inclusive, or from the evidence adduced before the Tax Court, whether the taxpayer deducted from its gross income the amount paid by it in premiums on the policy during those years respectively.

Sections 22(b) (1) and (2) (A) of the Internal Revenue Code, 26 U.S.C.A., in part provide:

"(b) *Exclusions from gross income.* The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

"(1) *Life insurance.* Amounts received under a life insurance contract paid by reason of the death of the insured, whether in a single sum or otherwise * * *;

"(2) *Annuities, etc.* * * * In the case of a transfer for a valuable consideration, by assignment or otherwise, of a life insurance, * * * contract, or any in-

---

4. See New York Life Ins. Co. v. Federal Nat. Bank of Shawnee, Okl., 10 Cir., 143 F.2d 69, 70.

terest therein, only the actual value of such consideration and the amount of the premiums and other sums subsequently paid by the transferee shall be exempt from taxation under paragraph (1) or this paragraph. The preceding sentence shall not apply in the case of such a transfer if such contract or interest therein has a basis for determining gain or loss in the hands of a transferee determined in whole or in part by reference to such basis of such contract or interest therein in the hands of the transferor. * * * "

■ Since the taxpayer became the absolute owner and in legal effect the beneficiary under the policy in December, 1924, it would seem that any premiums paid by it on the policy in the years 1925 to 1929, inclusive, were not deductible in its returns for those years.

When the matter came on for hearing before the Tax Court, the taxpayer took the position that, since the Commissioner's determination recited that the taxpayer acquired the policy for a consideration and the Commissioner had made no finding of the amount of such consideration or that such consideration could not be determined from the books and records of the taxpayer, the determination was invalid and arbitrary on its face and no burden rested on the taxpayer to overcome by evidence the presumption that the determination of the Commissioner was correct.

The Tax Court overruled the taxpayer's contention and thereupon the taxpayer went forward with proof sufficient to establish that the Commissioner's determination was erroneous, but not sufficient to determine the exact amount of the proceeds of the policy which should have been included in the gross income of the taxpayer.

Under the adjudicated cases, as we shall presently point out, the Tax Court should have held the deficiency arbitrary and the Commissioner's determination invalid.

Then, upon appropriate application that a further hearing be had it should have heard evidence to establish the cost basis to the taxpayer and the correct amount of the tax.

■■ The burden of proof was on the taxpayer to show that the Commissioner's determination was invalid, but to meet that burden it was sufficient for the taxpayer to show that the determination was excessive and invalid. The taxpayer was not required also to prove that he owed no tax, or the correct amount of tax he did owe.[5] It may not be held that he is bound to pay a tax that confessedly he does not owe, unless his evidence was sufficient also to establish the correct amount of tax, if any, that might lawfully be exacted.

In Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 291, 79 L.Ed. 623, the court said:

"Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid. Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 271, 50 S.Ct. 263, 74 L.Ed. 848; Wickwire v. Reinecke, 275 U.S. 101, 105, 48 S. Ct. 43, 72 L.Ed. 184; Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212. Frequently, if not quite generally, evidence adequate to overthrow the Commissioner's finding is also sufficient to show the correct amount, if any, that is due. See, e. g., Darcy v. Commissioner, 2 Cir., 66 F.2d 581, 585. But, where as in this case, the taxpayer's evidence shows the Commissioner's determination to be arbitrary and excessive, it may not reasonably be held that he is bound to pay a tax that confessedly he does not owe, unless his evidence was sufficient also to establish the correct amount that lawfully might be charged against him. On the facts shown by the taxpayer in this case, the Board should have held the apportionment arbitrary and the Commissioner's determination invalid. Then, upon appropriate application that further hear-

5. Taylor v. Commissioner, 2 Cir., 70 F.2d 619, 620, 621; affirmed, Helvering v. Taylor, 293 U.S. 507, 513–515, 55 S.Ct. 287, 79 L.Ed. 623; Industrial Trust Co. v. Commissioner, 1 Cir., 165 F.2d 142, 148, 1 A.L.R.2d 144; Durkee v. Commissioner, 6 Cir., 162 F.2d 184, 187, 173 A. L.R. 553; Worcester County Trust Co. v. Commissioner, 1 Cir., 134 F.2d 578, 580; Hague Estate v. Commissioner, 2 Cir., 132 F.2d 775, 778; Laird v. Commissioner, 3 Cir., 85 F.2d 598, 601.

ing be had, it should have heard evidence to show whether a fair apportionment might be made and, if so, the correct amount of the tax. \* \* \*."

The case must be remanded.[6] On remand the Tax Court should adjudge the determination of the Commissioner invalid.

If on remand, the Commissioner makes an appropriate application that a further hearing be had, evidence should be received to determine the correct amount of the tax, if any is owing by the taxpayer. In the event such application is made, since the books, records and other evidence from which such determination must be made are in the possession of the taxpayer, after reasonable notice, the taxpayer may be required to produce such evidence.

Reversed and remanded with instruction to adjudge the determination of the Commissioner invalid and for further proceedings in accordance with the views herein expressed.

6. Helvering v. Rankin, 295 U.S. 123, 131, 55 S.Ct. 732, 79 L.Ed. 1343.